BURGUNDY BASIN INN, LTD., Appellant, v WATKINS GLEN GRAND PRIX CORPORATION et al., Respondents.

Fourth Department, February 13, 1976

*Bayer, Dupee & Smith (Jon Charles Dupee* of counsel), for appellant.

*Harpending, Fox, Buck, Gleckner & Danaher* for Watkins Glen Grand Prix Corporation, respondent.

*Nixon, Hargrave, Devans & Doyle (Michael Wolford* of counsel), for Cornucopia Productions, Inc. and another, respondents.

GOLDMAN, J. Plaintiff, Burgunday Basin Inn, Ltd., appeals from Special Term's order which granted the motion of defendants-respondents Cornucopia Productions, Inc. (Cornucopia) and Country Concerts Corp. (Country) to dismiss the third through the fifth, and the eighth and ninth causes of action in the amended complaint.[1]

On October 24, 1973 plaintiff commenced this action against defendant Watkins Glen Grand Prix Corp. (Watkins) (not a party to this appeal) and defendants-respondents Country and Cornucopia for damages to plaintiff's food service concession business and property. The damages are alleged to have

---

1. The ninth cause is not an issue on this appeal. By stipulation, it was voluntarily discontinued pending a related appeal to the Appellate Division of the Third Department.

occurred on and about July 28, 1973 in the course of a musical event known as the "Summer Jam", held on the property of defendant Watkins in the Town of Dix, New York and sponsored by Country and Cornucopia.

In May, 1972 plaintiff entered into a concession agreement with defendant Watkins, whereby plaintiff was granted the exclusive right to operate all food service concession stands at the Watkins Glen Grand Prix circuit during the events of the 1972, 1973 and 1974 seasons. Thereafter in April, 1973 defendant Watkins entered into a written lease agreement and a written operating agreement with Country regarding the "Summer Jam" musical festival. The agreements provided, *inter alia,* that Watkins was to supply adequate police protection and was to keep the perimeter fence around the Grand Prix grounds in good repair so as to exclude non-ticket holders. A permit was obtained from the State for a mass gathering not to exceed 150,000 persons.

Plaintiff was not a party to any written agreement with Country or Cornucopia, but in its amended complaint alleges that defendants' agents orally represented that adequate security and crowd control measures would be in effect to safeguard plaintiff's property. It further alleges that approximately 600,000 persons attended the festival and that the crowd became unruly and broke into the concession stands, stealing or vandalizing the contents and damaging plaintiff in the sum of $350,000.

Plaintiff's original complaint set forth 15 separate causes of action. Respondents Country and Cornucopia moved to dismiss the complaint. By an earlier order Special Term dismissed the first through fourth, and the eighth and ninth causes and granted leave to amend. This order was not appealed. Plaintiff served an amended complaint which set forth nine causes of action, and respondents brought on the instant motion before a different Special Term Justice to dismiss the third, fourth, fifth and eighth causes on the ground that they were essentially reallegations of the causes which had been dismissed from the original complaint on the first motion.

Special Term agreed that the challenged causes were "essentially the same" as those previously dismissed. Noting that no material change of facts or circumstances was alleged to have occurred since the time of the prior decision, Special Term held "that a legal determination made by our Court, not appealed from, is controlling and dispositive when the issues

precipitating such prior legal determination are again presented in the same case. *(Fadden v. Cambridge Mutual Fire Insurance Co.,* 51 Misc. 2d 858, affd. 27 A D 2d 487)".

Plaintiff argues that Special Term should not have dismissed without independently examining the amended pleading to determine whether it stated causes of action. We disagree. Our own inspection of the original and amended complaints satisfies us that Special Term was right in concluding that the third, fourth, fifth and eighth causes of action in the amended complaint were "essentially the same" as the ones which had been dismissed from the original complaint. This being so, the law of the case doctrine was properly invoked to dismiss those causes. The doctrine is "a rule of comity or convenience" which requires that "a court of co-ordinate jurisdiction * * * ordinarily should not disregard an earlier decision on the same question in the same case" *(Walker v Gerli,* 257 App Div 249, 251; see, also, *Abazoglou v Tsakalotos,* 36 AD2d 516, app dsmd 29 NY2d 544). This rule aims to promote orderly litigation by avoiding a practice which "virtually amounts to an appeal from one Special Term to another Special Term for a review of the first order" *(Platt v New York & Sea Beach Ry. Co.,* 170 NY 451, 458).

Since the law of the case doctrine is limited in application to courts of co-ordinate jurisdiction, it cannot, of course, bar this court from passing upon the sufficiency of the amended complaint *(Rager v McCloskey,* 305 NY 75, 78; *Field v Public Administrator,* 10 AD2d 97, 98; *Musco v Pares,* 2 AD2d 689; *Walker v Gerli,* 257 App Div 249, 251, *supra;* see, also, *Hornstein v Podwitz,* 254 NY 443, 450; *Vogeler v Alwyn Improvement Corp.,* 247 NY 131, 134-135; *Ansorge v Kane,* 244 NY 395, 397; *Northville Dock Corp v Aller,* 15 AD2d 947, affd 15 NY2d 498). Nor does it matter that a reversal of the order under review would overrule a prior order of Special Term which decided essentially the same questions. Since the first order was not appealed, it is not *stare decisis* in this court *(Kenneth v Newgold,* 183 App Div 652, 656). Hence we may properly examine the allegations in the amended complaint to see whether they are legally sufficient. Indeed, we must do so since Special Term cannot.

Although the third cause of action in the amended complaint is in essence only a succinct restatement of the matters alleged in the first through fourth causes in the original complaint, we think that it is sufficient to state a cause of

action. It alleges that in organizing the mass gathering the defendants carelessly, negligently and recklessly failed in their duty to afford adequate security and crowd control measures to avoid damage to plaintiff's property. We reject respondents' argument that they are not liable for failure to provide adequate security because their agreement with Watkins obligated Watkins to supply adequate security and police protection. While that agreement might entitle respondents to indemnity from Watkins, it does not bind appellant nor does it relieve respondents of any legal duty which they might owe to appellant in the first instance. We also reject respondents' contention that they owed no legal duty to appellant. We find the answer in *Palsgraf:* "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension" *(Palsgraf v Long Is. R.R. Co.,* 248 NY 339, 344). The risk reasonably to be perceived in promoting a mass gathering of the magnitude alleged certainly included the possibility that property in the area would be destroyed if adequate crowd control and security measures were not in effect. Moreover, the security and crowd control provisions in respondents' agreement with Watkins show not merely that the risk should have been perceived, but that in fact it was perceived. *Kimbar v Estis* (1 NY2d 399), upon which respondents rely, is distinguishable on this ground, and on the further ground that there the hazard was not invited. Appellant's third cause of action should, therefore, be reinstated.

In the fourth and fifth causes of action in the amended complaint plaintiff attempts to set forth claims for fraud based on misrepresentations by the defendants that "adequate and effective security crowd limitation and crowd control measures would be in effect at said 'Summer Jam' so as to prevent injury to said plaintiff and its property." The fourth cause of action alleges that those representations were "fraudulent in that they were carelessly, recklessly and negligently made". The fifth cause of action alleges that the same misrepresentations "were made knowingly, recklessly, indifferently, and with knowledge that said representations and statements were false". Normally mere promissory statements as to what will be done in the future will not sustain an action for fraud *(Adams v Clark,* 239 NY 403, 410). However, a positive expression of a present intent to perform an act in the future may be actionable if "actually made with a preconceived and

undisclosed intention of not performing it" *(Sabo v Delman,* 3 NY2d 155, 160; *Adams v Clark, supra; Mendelow v Slabodkin,* 47 AD2d 712; see *Rudman v Cowles Communications,* 30 NY2d 1, 9). Put another way, "a specific affirmation of an arrangement under which something is to occur, when the party making the affirmation knows perfectly well that no such thing is to occur" must be distinguished from "prophecy and prediction of something which it is merely hoped or expected will occur in the future" *(Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403, 408, quoting *Sabo v Delman, supra,* and *Ritzwoller v Lurie,* 225 NY 464, 468). Statements in the former category may be actionable; those in the latter category cannot be.

We think that the alleged representations concerning adequate security and crowd control measures fall into the latter, nonactionable category. The plaintiff does not allege that defendants made the representations with intent to dishonor them. Instead, it acknowledges that defendants "proposed to undertake" crowd control measures, but alleges that they "knew, or reasonably should have known" that the measures would be inadequate. Moreover, the defendants' representations necessarily entailed the prediction of a rather unreckonable future phenomenon—namely, the mood and behavior of a crowd not yet assembled, in circumstances that could neither be foreseen with certainty nor controlled with precision. As such the representations were heavily freighted with prophecy, speculation and chance. In the circumstances we conclude that they were more in the nature of statements of future aspirations than of reports of "known, certain and definite existing fact" within defendants' present knowledge or intent *(Bailey v Diamond Int. Corp.,* 47 AD2d 363, 366; cf. *Channel Master Corp. v Aluminium Ltd. Sales, supra).* Accordingly, insofar as the fourth and fifth causes purport to allege knowing misrepresentation of present facts or intent, they cannot be sustained.

For similar reasons the allegations of "negligent" or "reckless" misrepresentations also fail to state a cause of action. It is true that *scienter,* a necessary element of fraud *(Channel Master Corp. v Aluminium Ltd. Sales, supra,* p 407), includes not only knowing falsehood but also "a 'reckless indifference to error', a 'pretense of exact knowledge,' *(Smith v Hedges,* 223 NY 176, 184) and the assertion of a false material fact 'susceptible of accurate knowledge', but stated to be true on

the personal knowledge of the representer *(Kountze v Kennedy,* 147 NY 124, 130; see *Hadcock v Osmer,* 153 NY 604; *Ultramares Corp. v Touche,* 255 NY 170)." *(Skrine v Staiman,* 30 AD2d 707, affd 23 NY2d 946). However, as has been said, the alleged representations here relate to *future* events, not susceptible of accurate knowledge when they were made. We would have a different question if it were alleged, for example, that defendants said that they had taken certain specific, concrete measures when in fact they had not checked to see if they had been performed. But instead the complaint alleges merely that the efficacy of the "proposed" measures was falsely predicted. Allegations of negligent misrepresentations as to future events will not sustain an action for fraud. For all of these reasons the fourth and fifth causes of action were properly dismissed.

We turn finally to the eighth cause of action, which is alleged only against respondent Country. It is stated that Country, by a lease agreement with Watkins, assumed liability for all damages to Watkins' property. That agreement, the complaint continues, applies to equipment in the concession stands which was used by plaintiff but owned by Watkins. The complaint concludes that if Watkins should bring a successful action against plaintiff for damages to the equipment, "then by virtue of the said lease agreement, the plaintiff should be indemnified by Country Concerts, Inc.". It is not alleged that plaintiff is in privity to the contract between Country and Watkins, nor that Watkins has actually brought an action.

Technically a claim for indemnity does not arise until the prime obligation to pay has been established *(Matter of Valstrey Serv. Corp. v Board of Elections,* 2 NY2d 413, 415; 28 NY Jur, Indemnity, §§ 2, 20, 27; see, also, *McCabe v Queensboro Farm Prods.,* 22 NY2d 204). Nevertheless, for the sake of fairness and judicial economy, the CPLR allows third-party actions to be commenced in certain circumstances before they are technically ripe, so that all parties may establish their rights and liabilities in one action (e.g., *Krause v American Guar. & Liab. Ins. Co.,* 27 AD2d 353, 355, affd 22 NY2d 147, 152-153; *Matter of Valstrey Serv. Corp. v Board of Elections, supra,* p 416; see 28 NY Jur, Indemnity, § 27). There is no statutory authority which permits a plaintiff to bring a third-party action unless, unlike the present plaintiff, a counterclaim is asserted against him, in which event "he may proceed pursuant to section 1007 as if he were a defendant" (CPLR

1011). Moreover, there is no justification for permitting a claim of indemnity where the primary action which might be the source of the right to indemnity (here an action by Watkins against plaintiff) is not even pending. The eighth cause of action was properly dismissed.

The order should be modified by reinstating the third cause of action, and as modified, affirmed.

MARSH, P.J., MOULE, SIMONS, and MAHONEY, JJ., concur.

Order unanimously modified in accordance with opinion by GOLDMAN,, J. and as modified affirmed without costs.