■ DAVID ROTZ, Appellant, v CITY OF NEW YORK et al., Respondents, et al., Defendant.—Order, Supreme Court, New York County (George Bundy Smith, J.), entered October 3, 1986, which, *inter alia,* granted the respective motions of the defendants City of New York and Paramount Pictures Corporation for summary judgment dismissing the complaint against them, unanimously reversed, on the law, the motions denied, and the complaint reinstated against these defendants, without costs.

In this case, the IAS court determined the issues of negligence and proximate cause, as a matter of law, on a motion for summary judgment. An examination of the record indicates that a summary disposition of those issues was inappropriate.

The facts giving rise to the action are as follows. On Friday evening, July 22, 1983, plaintiff David Rotz, then 25 years of

age, was part of what he described as a "tremendous crowd" that was in attendance at a free Diana Ross concert held in Central Park. According to Mr. Rotz' testimony at his 50-h hearing, while he was standing during the performance, completely surrounded by people "jammed in like sardines", a commotion erupted and "everybody started running and they just ran on top of everybody". In the course of this stampede, he was unable to move and was knocked down and trampled upon, suffering a serious fracture to his left leg. While the crowd was running, there were shouts of "get out of the way, there's a lion, a lion".

Plaintiff commenced the instant action against the City of New York, as the owner of the park, against Anaid Film Productions Inc., the producer of the concert responsible for all arrangements with respect to the event pursuant to a permit agreement with the city's Department of Parks and Recreation, and against Paramount Pictures Corporation, the holder of a license, pursuant to an agreement with Anaid, giving Paramount the right to create and broadcast a video-tape of the event.

The complaint alleges that defendants operated, supervised, arranged, managed and controlled the concert at which plaintiff was injured and they are charged with negligence in failing to maintain the concert site in a "reasonably safe, suitable and well-controlled condition" and in failing to provide for the safety and well-being of those persons lawfully present by failing to properly and adequately supervise the large crowd at the concert.

The various agreements entered into by the defendants are significant on the issues involved. The "Permit Agreement" between the Parks Department and Anaid made Anaid responsible for all arrangements with respect to the concert, including security, and expressly obligated Anaid, the permittee, to the following:

"6. Permittee hereby expressly waives any and all rights, claims and demands, and forever releases and discharges City, Commissioner and their agents from any and all demands, claims, actions and causes of action arising from or out of the use for occupancy of Central Park as provided herein, *including but not limited to * * * civil commotion, riot * * * and/or* from any and all causes whatsoever.

"7. Permittee shall indemnify the City against and shall keep, save and hold City, Commissioner and their agents and employees harmless from any and all damages, injuries and

liabilities for anything and everything arising from or out of the occupancy by Permittee of Central Park * * *

"8. Permittee shall procure, at its own cost and expense the following kinds of insurance for the term of this agreement * * *

"(b) Comprehensive general liability insurance against claims, suits and judgments against City and/or Permittee for death, personal injuries and property damage arising out of or occurring during the operation, occupancy, maintenance or use of the Central Park by Permittee" (emphasis added).

The agreement between Paramount and Anaid, referred to as "Deal Memorandum", gave Paramount the right to televise and videotape the concert and also granted it certain exploitation rights in connection with such broadcasts in return for which Paramount assumed substantial financial obligations. One of those financial obligations was included in a letter agreement dated July 1, 1985 sent to the Department of Parks by Anaid. That agreement, which was signed and agreed to by Paramount as well, expressly provides in paragraph 3 (b) (ii) for the allocation of moneys to the Parks Department or its designee to "be applied against police overtime charges incurred in connection with the Concert, for which Anaid and/or Paramount will be responsible up to the sum of $10,000".

After joinder of issue, but before discovery had taken place, defendant Paramount moved for summary judgment dismissing the complaint and defendant city cross-moved for similar relief. The basis for Paramount's motion was its assertion that it was merely a licensee which purchased television rights to the concert and had no role in the management or control of the event, which rested upon Anaid and/or the city, and therefore it, Paramount, owed no duty to those who attended. Paramount further argued that, in any event, the precipitating cause of the stampeding—i.e., the yelling to get out of the way because a lion was coming—was an unforeseeable intervening event that precluded liability.

The city's position was that all responsibility for security arrangements rested on Anaid pursuant to their "Permit Agreement", that insofar as plaintiff's claim was predicated on inadequate police protection, the city in its governmental function of providing police protection generally owed this plaintiff no "special duty" and that, even if it owed plaintiff some duty by virtue of its ownership of this recreational area, the cause of the stampede was an extraordinary unforeseeable intervening act that precluded liability.

The IAS court granted summary judgment dismissing the complaint in favor of both defendants.

We are in agreement with much of the IAS court's careful and thoughtful analysis regarding the potential liability of the City of New York. As noted by that court, to the extent that plaintiff's claim is predicated upon allegations of inadequate police protection generally it must fail since there is a complete absence of any showing that some special duty of protection was owed to this plaintiff in distinction to the governmental obligation in that regard owed to the public at large. *(See, Cuffy v City of New York,* 69 NY2d 255.) On the other hand, contrary to the defendant city's contention, the IAS court properly concluded that the city, in its capacity as the owner and operator of the public park, did owe a duty to those, such as plaintiff, who had been invited to enter that park. Its duty in that regard included the obligation to provide an adequate degree of general supervision of the crowd invited by exercising reasonable care against foreseeable dangers under the circumstances prevailing. *(See, Caldwell v Village of Is. Park,* 304 NY 268.)

Our point of departure with the IAS court is its summary determination that the danger here was not foreseeable and that, as a matter of law, the injuries to plaintiff were caused by an unforeseeable, intervening event.

Issues of negligence, foreseeability and proximate cause involve the kinds of judgmental variables which have traditionally, and soundly, been left to the finders of fact to resolve even where the facts are essentially undisputed. *(See, Derdiarian v Felix Contr. Corp.,* 51 NY2d 308; *Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 520, n 8; *Havas v Victory Paper Stock Co.,* 49 NY2d 381; *Luce v Hartman,* 6 NY2d 786; *Caldwell v Village of Is. Park, supra,* at 274; *Sadowski v Long Is. R. R. Co.,* 292 NY 448.)

It has frequently been stated that negligence consists of a duty of care owed to another and a breach of such duty. *(See, e.g., Pulka v Edelman,* 40 NY2d 781, 782, citing *Palsgraf v Long Is. R. R. Co.,* 248 NY 339.) Here the duty which was owed to plaintiff, as one who had been invited to attend a concert held in the city's public park, was the exercise by the city of reasonable and ordinary care against foreseeable dangers and this included the furnishing of an adequate degree of general supervision of such activities as would endanger others utilizing the park. What degree of care is reasonable necessarily depends upon the peculiar attendant circum-

stances of the particular case. Negligence arises from breach of duty and is relative to time, place and circumstance. Ordinary care must be in proportion to the danger to be avoided and the consequences that might reasonably be anticipated from the neglect. *(Caldwell v Village of Is. Park, supra,* at 273-274, and authorities cited therein; *Rhabb v New York City Hous. Auth.,* 41 NY2d 200; *Fritz v City of Buffalo,* 277 NY 710.)* The parameters of the duty are most succinctly and meaningfully delineated in Chief Judge Cardozo's classic phrase "The risk reasonably to be perceived defines the duty to be obeyed". *(Palsgraf v Long Is. R. R. Co., supra,* at 344.)

In the instant case the inquiry as to what risks were reasonably to be perceived must be framed in terms of what risks or dangers should reasonably have been anticipated by the city from the gathering of an extremely large crowd to hear a free concert by a renowned entertainer in Central Park on a summer evening. In light of common contemporary experience a jury could certainly find that, in the absence of adequate supervision and control of that crowd, it was reasonably foreseeable that disorder, unruliness, a melee or a riot could erupt from some cause ignited by the vagaries of myriad individuals "jammed together" in a heightened atmosphere. Indeed, the city itself anticipated precisely such risk as evidenced by paragraph 6 of its "permit agreement" with Anaid. While that agreement held the city harmless for such incidents vis-à-vis Anaid and further provided for the city's indemnification by Anaid, this did not relieve the city from the duty which it owed to plaintiff, as one invited to attend the concert, to protect against that risk. *(See, Burgundy Basin Inn v Watkins Glen Grand Prix Corp.,* 51 AD2d 140, 144.)

A jury here could reasonably find that the risk of a riot or a stampede could have been averted, or its consequences contained, by adequate crowd-control measures which would have inhibited or prevented the eruption of precipitating incidents such as individual or group altercations, arguments or other provocative causes and that defendant city failed to exercise the reasonable care necessary under the circumstances to avoid that foreseeable risk.

The IAS court focused solely upon the foreseeability of the exact manner in which the disturbance was precipitated and concluded, as a matter of law, that it was an unforeseeable intervening event which relieved defendant of liability. The law, however, is to the contrary. "That defendant could not anticipate the precise manner of the accident or the exact extent of injuries, however, does not preclude liability as a

matter of law *where the general risk* and character of injuries are foreseeable". *(Derdiarian v Felix Contr. Corp., supra,* at 316-317 [emphasis added]; *see also, Riviello v Waldron,* 47 NY2d 297, 304; *Williams v State of New York,* 308 NY 548; *Lowery v Manhattan Ry. Co.,* 99 NY 158.) Here, of course, the general risk reasonably to be anticipated from the dynamics of this large closely packed standing assemblage was the outbreak of disorder or commotion necessarily precipitated or initiated by the act or acts of some third persons with resultant injury to some of those, such as plaintiff, who were in attendance at the concert.

On the issue of proximate cause, plaintiff's papers sufficiently put into issue that defendant's failure to properly supervise the crowd was a substantial causative factor in the sequence of events which led to plaintiff's injury. *(See, Nallan v Helmsley-Spear, Inc., supra.)* The fact that the acts of a third person or persons intervened between defendant's conduct and the plaintiff's injury does not automatically sever the causal connection necessary to establish liability if that intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence—in this case, the alleged failure to properly supervise the crowd by adequate crowd-control measures. *(Derdiarian v Felix Contr. Corp., supra; Carlock v Westchester Light. Co.,* 268 NY 345; *Kingsland v Erie County Agric. Socy.,* 298 NY 409.) The intervening act of a third party which is a normal consequence of a situation created by the actor's negligent conduct is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about. (Restatement [Second] of Torts § 443.)

Whether defendant failed to provide adequate crowd-control measures to avert that general risk reasonably to be anticipated here and, if so, whether the intervening conduct of third persons in initiating the stampede whereby plaintiff was injured was a normal or foreseeable consequence of defendant's failure to adequately supervise the crowd are fact questions which should be resolved at a trial and not as a matter of law on this motion for summary judgment. *(Derdiarian v Felix Contr. Corp., supra.)*

With respect to the defendant Paramount, dismissal of the complaint was predicated primarily upon the provisions of its licensing agreement with Anaid which the court found refuted any alleged control, management and supervision of the concert by Paramount. While that agreement charged Anaid with responsibility for security at the concert, the monetary obliga-

tions undertaken by Paramount, particularly in connection with payment of police overtime charges, the fact that it was to be physically present in connection with the videotaping of the concert from which it must be assumed it expected to gain financially, and for which purpose a large crowd had been collected, and the possible legal ramifications stemming from such facts *(see, e.g., Philpot v Brooklyn Natl. League Baseball Club,* 303 NY 116), sufficiently raise issues which militate against the granting of summary judgment in Paramount's favor prior to the completion of discovery, particularly since the critical facts are within Paramount's exclusive knowledge and can only be ascertained by plaintiff through pretrial discovery *(see, Di Miceli v Olcott,* 119 AD2d 539). Concur— Sandler, J. P., Carro, Kassal and Ellerin, JJ., concur.