[741 NYS2d 233]

JILL FLORMAN, Respondent, et al., Plaintiff, v CITY OF NEW YORK et al., Respondents, and DELSENER/SLATER ENTERPRISES, INC., et al., Appellants, et al., Defendants.

First Department, May 7, 2002

APPEARANCES OF COUNSEL

*Tobi R. Salottolo* of counsel, New York City (*Proner & Proner, P.C.,* attorneys), for respondent.

*Tahirih M. Sadrieh* of counsel (*Edward F. X. Hart* on the brief; *Michael A. Cardozo, Corporation Counsel* of New York City, attorney), for respondents.

*Sherman B. Kerner* of counsel (*Carl Z. Zetterstrom* on the brief; *Turner & Owen,* attorneys), for appellants.

### OPINION OF THE COURT

SULLIVAN, J.

On the afternoon of July 11, 1996, plaintiff Jill Florman, a female friend and two male friends drove to Randall's Island to attend the Lollapalooza Festival, a concert which was being presented at Downing Stadium by defendants Delsener/Slater Enterprises, Inc.; Ardee Festivals, Inc.; Ardee Productions, Ltd.; Beach Concerts Inc.; Broadway Concerts, Inc.; Ron Delsener and Mitch Slater (collectively Delsener), pursuant to a permit issued by the City of New York.

Plaintiff and her friends, who did not have tickets but hoped to buy some scalped tickets when they arrived, parked their vehicle in one of the ball fields being used for parking and purchased concert tickets from an unidentified man. They remained for 30 or 40 minutes in the parking lot, tailgating, with other friends whom they met, before heading for the stadium. When they arrived at the gate, they learned that their tickets were counterfeit and were turned away. The group returned to the parking lot. Plaintiff and her girlfriend found their car and stood a few feet in front of it, talking, while their two male friends, intent on finding the scalper, went looking for him. Plaintiff then observed her two friends, about 200 feet away, initially yelling at the scalper and two other men, and, later, as the confrontation escalated, fighting with them. She watched for about four minutes. According to her deposition testimony, her next recollection was of waking up in the hospital. She had not seen or heard any vehicle coming toward her. She later learned that a vehicle struck her and that, after hitting her, it had hit another member of the group.

According to plaintiff, her girlfriend later told her that the vehicle "came out from nowhere" and that she "thought" the driver was the scalper's friend. Although her other friends thought the same, they were "not positive." According to plaintiff, the police questioned the scalper and his friends, but were unable to ascertain the driver's identity.

The City of New York, Delsener—the concert's producer—and its subcontractors provided security for the event. Delsener

hired a private company to provide security inside the stadium and had obtained the services of Country Club Services, Inc. and C.C.S. Parking, Inc. to manage and control vehicular parking. Sometime prior to the concert, the Parks Department of the City of New York held at least one meeting, attended by Delsener, its subcontractors, representatives of the Police and Fire Departments and other City agencies to discuss the logistics, including security, of holding such a concert.

As the record shows, Country Club, which had over 30 employees, including seven or eight managers, deployed in and around the ball fields, was responsible for directing cars into parking spaces in an orderly fashion and taking the necessary precautions to avoid the blocking of parked vehicles. Its attendants, wearing security vests and equipped with lights, were also to assist patrons in finding their cars after the concert and getting safely to them. An estimated 20 officers from the Department of Parks and Recreation's Park Enforcement Patrol (PEP) monitored the area outside the stadium, primarily the ball fields, to ensure the patrons' observance of Parks Department rules and regulations. Some were assigned to look for illegal vendors.

The New York City Police Department also patrolled Randall's Island on the day of the concert. Concerned primarily with the smooth flow of traffic on and off the island and the safety of the attendees, the police also patrolled the parking fields, maintaining a constant presence of 24 officers and three sergeants, mainly to prevent loitering and drinking and drug usage. In all, approximately 100 police officers patrolled Randall's Island between 4:00 and 5:00 P.M. on the day in question.

The contract between the City and Delsener provided for Delsener's use of Downing Stadium and additional areas on Randall's Island and required Delsener "[a]t its sole cost and expense * * * to operate an efficient vehicular parking operation at no charge to the public" and to provide "sufficient trained security personnel as may be necessary * * * for the proper policing of the [s]tadium and additional facilities." Delsener had to prepare and submit for the approval of the Commissioner of the Department of Parks and Recreation an operations plan that included security in the parking fields from one hour before the start of the concert until two hours after the last performance. Another of the contract's provisions required Delsener to "maintain close liaison with [PEP] and New York City Police and cooperate with all efforts to remove disorderly patrons and illegal vendors from the [p]ermitted

and surrounding [p]remises and to ensure the safety and protection of all persons and property."

Plaintiff, alleging negligence in failing to take reasonable security precautions, commenced this action against, inter alia, the City, the Department of Parks and Recreation and Delsener to recover for personal injuries.* After joinder of issue and discovery, Delsener moved for summary judgment, asserting that, as neither the owner nor lessee of the premises, it did not have a common-law or contractual duty to protect plaintiff from the criminal acts of third parties, of which, in any event, it had no prior notice. It contended further that, under the provisions of its contract with the City, the Police Department and PEP retained responsibility for patrolling the parking fields and that, in any event, any negligence on its part did not proximately cause plaintiff's injury.

The City cross-moved for summary judgment, arguing that while there were issues of fact with respect to Delsener's responsibility for security in the parking fields, any negligence on the part of the City or Delsener was not the proximate cause of plaintiff's accident or injuries. In opposition, plaintiff argued that Delsener had specifically contracted to provide security personnel in the ballfields and that these obligations were so wide-ranging that they displaced the City's, and, thus, Delsener had a common-law duty to provide minimal security to safeguard her against the criminal acts of third parties.

Supreme Court denied summary judgment to both defendants. It rejected Delsener's argument that, as a permittee, it had insufficient control over the premises to be subject to liability. Instead, it found that Delsener was granted unrestricted use of the stadium and parking fields and thus stood in the shoes of an occupant or lessee of the premises who was subject to liability to third persons for failure to maintain the premises in a reasonably safe condition. In addition, the court found that Delsener's common-law duty to maintain the parking area in a reasonably safe condition included providing minimal security against the foreseeable criminal acts of third parties. The court also rejected Delsener's claim of lack of prior notice, finding that its contract with the City, which required Delsener to provide security both inside and outside of the stadium, gave notice of a perceived risk. It also rejected both Delsener's and the City's claim that any failures on their part

---

* Also named as defendants were Country Club Services, Inc. and C.C.S. Parking, Inc., whose motion for summary judgment was granted in an order entered July 12, 2000.

were not the proximate cause of plaintiff's injuries, holding that an attack in the parking lot was not an extraordinary, unforeseeable or superseding act that broke the causal nexus between defendants' alleged inadequate security and plaintiff's accident. Delsener appeals, pursuing the same arguments that it made before the motion court. Although it did not file a notice of appeal, the City argues that, on a search of the record, the complaint should also be dismissed as to it because plaintiff failed to raise a triable issue of fact as to foreseeability and proximate cause. We reverse.

Delsener argues that under its contract with the City, its only obligation relative to the providing of security was to submit an operations plan which included a plan for security. According to Delsener, there was no written plan; instead, a mutually agreed upon security plan, developed at interagency meetings held prior to the concert, required Delsener to provide security inside the stadium and at the gates along the perimeter of the stadium. The police and PEP would have responsibility beyond the stadium. Delsener was, however, as the record shows, obligated under the contract to provide security for all permitted facilities, including the parking areas, and, thus, has failed, as a matter of law, to demonstrate that it was relieved of this contractual obligation.

While a landlord, and, as well, a permittee with a contractual obligation to provide security, has a common-law duty to take minimal precautions to protect tenants and users of the facility from foreseeable harm, including the criminal conduct of third parties (*see, Burgos v Aqueduct Realty Corp.*, 92 NY2d 544, 548), this duty arises only when such party "knows or has reason to know that there is a likelihood that third persons may endanger the safety of those lawfully on the premises [citations omitted], as where the landlord [or permittee] is aware of prior criminal activity on the premises [citation omitted]." (*Brewster v Prince Apts.*, 264 AD2d 611, 614, *lv dismissed* 94 NY2d 875, *lv denied* 94 NY2d 762; *see, Mulvihill v Wegmans Food Mkts.*, 266 AD2d 851; *Karp v Saks Fifth Ave.*, 225 AD2d 1014, 1016.) "[T]he possessor of land, be he landowner or leaseholder, is not an insurer of the safety of those who use his premises [citations omitted]." (*Leyva v Riverbay Corp.*, 206 AD2d 150, 152.) Moreover, while a landowner must provide reasonable security measures, it need not provide "optimal [or] the most advanced security system available [citation omitted]." (*Id.* at 155.)

Here, as the record shows, Delsener coordinated its security obligation with the Department of Parks and Recreation and

the Police Department, which placed PEP personnel and police patrols in the ball fields used for parking. The emphasis, based on previous experience at stadium concerts, was on the interdiction of quality of life crimes, with emphasis on curtailing the consumption of alcohol and protecting parked vehicles against break-ins. The City and Delsener knew that the concert would attract a large crowd and a corresponding volume of vehicular traffic. Thus, they could reasonably anticipate that, absent adequate supervision and security, traffic accidents might occur.

Although the parties have proceeded on the basis that plaintiff was intentionally injured, plaintiff's claim that this was a criminal attack is, for the most part, speculative. The record support for the assertion that the driver was the ticket scalper's friend, based exclusively on hearsay, is, at best, weak. Although plaintiff, in her affidavit opposing summary judgment, was less equivocal as to her friends' knowledge, at her deposition she testified that her friends told her that they "thought" the driver was the scalper's friend. Nor did she explain her failure to submit affidavits from her friends. The only other evidence on the point is the police report, which indicates that unnamed witnesses reported that the driver was fleeing the scene of an argument. Moreover, the claim is somewhat undercut by plaintiff's deposition testimony that, up until the moment she was struck, she was watching the confrontation between the ticket scalper and his friends and her friends. She makes no mention of seeing any of the principals flee the scene in an automobile.

In any event, assuming that the driver of the offending vehicle criminally assaulted plaintiff, his actions were not a foreseeable consequence of Delsener's alleged failure to provide adequate security. Although some forms of criminal activity might have been reasonably foreseeable in a gathering of this kind (see, e.g., Rotz v City of New York, 143 AD2d 301 [outbreak of disorder or commotion precipitated by the act or acts of third persons a general risk reasonably to be anticipated from dynamics of large, closely packed standing assemblage attending free concert by renowned entertainer in Central Park]), that someone would drive, recklessly or intentionally, at high speed in a parking field striking standers-by is not a danger normally associated with crowd control.

Indeed, plaintiff has failed to offer any evidence of prior criminal activity in the parking fields at Downing Stadium or any other evidence from which a conclusion of foreseeability could

be drawn. Instead, as evidence of foreseeability, she relies on the contract provisions requiring Delsener to provide security in the parking areas. This is clearly insufficient. True, the City and Delsener knew that the concert would attract a large crowd and a corresponding influx of vehicular traffic. Thus, it was reasonably foreseeable that unless there were attendants regulating the flow of traffic and facilitating the availability of parking spaces, traffic jams and, worse yet, accidents could occur. In recognition of these potential problems, the contract required that Delsener maintain a security presence in the parking fields. This is not to suggest, however, that such a contractual provision constitutes tacit recognition that an incident such as the one at issue would occur. Driving at high speed, recklessly or intentionally, into pedestrians standing in a parking field near their parked car is not a danger associated with crowd control and nothing in the record indicates that defendants foresaw or had reason to foresee such an incident. (*See, e.g., Karp v Saks Fifth Ave., supra*, 225 AD2d at 1016.)

While it is not necessary to show that the prior criminal conduct is of the same type or that it occurred in the same location (*Jacqueline S. v City of New York*, 81 NY2d 288, 294), plaintiff must make a showing that the incident was foreseeable. No such showing has been made. (*See, Daniels v Manhattan & Bronx Surface Tr. Operating Auth.*, 261 AD2d 115, *lv denied* 93 NY2d 815.)

In holding otherwise, the motion court relied on *Burgundy Basin Inn v Watkins Glen Grand Prix Corp.* (51 AD2d 140), which involved the risk of property damage during a mass gathering at an outdoor musical festival, allegedly attended by approximately 600,000 persons. There, the Court determined that a contractual requirement for security established that the risk of an unruly crowd causing property damage was, in fact, perceived. The analogy to the risk here fails, however. The contractual requirement regarding security in *Burgundy Basin Inn* shows that the risk that property might be destroyed was perceived by the contracting parties. On the other hand, to infer from the security requirement with respect to the parking area in this case that a driver would use his vehicle as a weapon to commit a criminal assault on pedestrians would be an unreasonable and unwarranted extension of the concept of foreseeability.

Furthermore, plaintiff has failed, as a matter of law, to establish that inadequate security was a proximate cause of her injuries. Downing Stadium and its parking fields, part of a

public park, cover a large area, sufficient to accommodate some 15,000 patrons. As the record shows, the City and Delsener undertook the requisite security measures. Approximately 100 police officers were on duty at Randall's Island, including 24 officers and three sergeants specifically assigned to the parking fields; approximately 20 PEP officers, working primarily in the parking fields, were also assigned to the event as were 30 employees of the parking subcontractor, all of whom were deployed in and around the ball fields. It is difficult to understand what measures could have been undertaken to prevent plaintiff's injury except presumably to have had a security officer posted at the precise location where the incident took place or wherever pedestrians were gathered, surely an unreasonable burden. (*See, Leyva v Riverbay Corp., supra,* 206 AD2d at 153.) Even then, it is doubtful that such a random act could have been prevented. But even assuming a lapse in the security afforded in the parking lot, plaintiff's injuries are the result of the independent, intervening act of the driver of the vehicle that did not flow from any lack of security. (*Singh v Kolcaj Realty Corp.,* 283 AD2d 350, 351, citing *Derdiarian v Felix Contr. Corp.,* 51 NY2d 308.) Thus, the complaint should be dismissed against all the remaining defendants, including the City and Department of Parks and Recreation. Even though the municipal defendants did not file a notice of appeal, on a search of the record they are entitled to summary judgment (*see, Chamberlain v City of New York,* 286 AD2d 232, 233-234, *lv denied* 97 NY2d 605, citing *Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 110-112) because, as in the case of Delsener, plaintiff has failed to raise a triable issue of fact on the issues of foreseeability and proximate cause.

Accordingly, the order of the Supreme Court, New York County (Marcy Friedman, J.), entered April 11, 2001, which, inter alia, denied defendants' motion and cross motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs or disbursements, and the motions granted. The Clerk is directed to enter judgment in favor of defendants-appellants and defendants-respondents, dismissing the complaint as against them.

Motion seeking leave to submit reply brief granted.

MAZZARELLI, J.P., ANDRIAS, BUCKLEY and MARLOW, JJ., concur.

Order, Supreme Court, New York County, entered April 11, 2001, reversed, on the law, without costs or disbursements, and the motion and cross motion for summary judgment

dismissing the complaint granted. Motion seeking leave to submit reply brief granted.