■ RAM KRISHNA MAHESHWARI et al., Respondents, v CITY OF NEW YORK, Respondent, and DELSENER/SLATER ENTERPRISES, LTD., Appellant, et al., Defendants. [763 NYS2d 287] —Order, Supreme Court, New York County (Marcy Friedman, J.), entered October 1, 2001, which, insofar as appealed from, denied the motion of defendant-appellant Delsener/Slater Enterprises, Ltd. for summary judgment, reversed, on the law, without costs, and defendant-appellant's motion granted. The Clerk is directed to enter judgment in favor of defendants Delsener/Slater Enterprises, Ltd. and the City of New York, dismissing the complaint as against them.

This Court has already held that a similarly situated plaintiff, who was injured at the very same 1996 Lollapalooza Festival as the result of what plaintiff characterized as a deliberate attack (she was struck by a speeding automobile while standing in the parking lot), failed, as a matter of law, to establish that inadequate security was a proximate cause of her injuries.

In so ruling, this Court stated that "[i]t is difficult to understand what measures could have been undertaken to prevent plaintiff's injury except presumably to have had a security officer posted at the precise location where the incident took place or wherever pedestrians were gathered, surely an unreasonable burden. * * * Even then, it is doubtful that such a random act could have been prevented" (*Florman v City of New York*, 293 AD2d 120, 127 [2002]).

Plaintiff and the dissent seek to distinguish this case from *Florman* on its facts, opining that, unlike *Florman*, "where virtually no level of security could have prevented the bizarre incident, here, the stationing of security guards at regular intervals might have succeeded in keeping a lid on the type of uncontrolled, escalating rowdiness that thrives in such conditions in the absence of a visible peace-keeping force." However, nothing in the record reflects any such "type of uncontrolled, escalating rowdiness."

The 59-year-old plaintiff testified that he had been handing out pamphlets to arriving concertgoers as they left their cars in the parking lot outside Downing Stadium on Randall's

Island ("They hurry, just take it"). After handing out pamphlets for a few minutes, he returned to a van where he had left his belongings and, as he unsuccessfully attempted to open the van's doors, he was cornered, attacked and beaten by four drunken white men, aged 18 to 20. There is nothing to indicate that the four were concertgoers. Plaintiff did not know how his attackers got to the parking lot or where they had been before they were in the parking lot ("I don't know anything about these people"). The first time he saw the individuals was when they cornered and attacked him. They did not say a word before attacking plaintiff, who suffered a fractured skull, facial fractures, and was rendered unconscious. No weapons were used in the attack and the attackers were not apprehended.

The dissent relies on "common contemporary experience" (*Rotz v City of New York*, 143 AD2d 301, 305 [1988]) and a journalist's description of the Lollapalooza audience as "a moshing crowd of bare-chested, sweating, staggeringly drunk and stoned 'Beavis and Butt-Head' types" for its conclusion that the Lollapalooza audience predictably would contain "a number of young men who could be expected to become intoxicated and engage in aggressive or violent behavior." However, even disregarding the hearsay nature of the journalist's description, a reading of her article reflects that it was not danger or criminality that was being reported, but her opinion that the Lollapalooza Festival "was not a whole lot of fun this year—unless standing in a huge, littered field with a moshing crowd of bare-chested, sweating, staggeringly drunk and stoned 'Beavis and Butt-Head' types is your definition of a good time." Moreover, *Rotz v City of New York* (143 AD2d 301, 302 [1988]), which is relied upon by the dissent, is readily distinguishable in that there the 25-year-old plaintiff, who was standing during the performance as part of a "tremendous crowd" at a free Diana Ross concert in Central Park, suffered a fractured leg when, completely surrounded by people "jammed in like sardines," a commotion erupted and "everybody started running and they just ran on top of everybody." No such scenario indicative of an out of control crowd or a failure by the organizers of the event to provide adequate crowd control or security is presented in this record and any such conclusion would be highly speculative.

Significantly, the attack on plaintiff took place not inside the stadium at the concert described by the journalist, but outside where people were alighting from their cars and, according to plaintiff, hurrying to the concert. Although plaintiff did not see any police officers or anybody on horseback in the parking lot,

he saw people in uniform directing traffic. There is no legal significance to the supposedly new evidence that the police "Post List" contained no indication of any assignment of patrols to the Sunken Meadow area where the attack took place. As found by this Court in *Florman*: "[E]ven assuming a lapse in the security afforded in the parking lot, plaintiff's injuries are the result of the independent, intervening [in this case criminal] act * * * that did not flow from any lack of security. * * * Thus, the complaint should be dismissed against all the remaining defendants, including the [nonmoving and nonappealing City defendants]" (*Florman v City of New York, supra* at 127). Concur—Andrias, Sullivan and Rosenberger, JJ.

Mazzarelli, J.P., and Saxe, J., dissent in a memorandum by Saxe, J., as follows: Under what circumstances may courts grant summary judgment dismissing claims of inadequate security when intentional attacks occur in the setting of a large outdoor concert? I conclude that under the circumstances presented here, summary judgment is precluded by issues of fact as to whether the incident was foreseeable and whether the security provided was adequate to avoid any such foreseeable incident. Accordingly, I dissent.

Plaintiff, Ram Krishna Maheshwari, a ministry worker for the International Society for Krishna Consciousness (ISKCON), was at the "Lollapalooza" concert held at Downing Stadium on Randall's Island in New York City on July 10, 1996. The headlining acts for this concert included heavy metal, rap and punk bands, such as Metallica, Wu Tang Clan and the Ramones. Concertgoers were permitted to arrive beginning at 10:00 A.M. for the concert, which was scheduled to begin at 2:00 P.M. and to end at 11:00 P.M. It was recognized that many attendees "tailgated," that is, socialized and consumed their own alcoholic beverages at their cars in the parking lot before and during the event. Beer was also served inside the stadium, and an attendee's hand could be stamped to permit attendees to go back and forth between the parking fields and the stadium.

That afternoon, plaintiff and other ISKCON temple members were gathered in the parking area located in the Sunken Meadow field, handing out ISKCON pamphlets to concertgoers as they got out of their vehicles. While heading back toward the temple van in which his possessions were held, plaintiff was accosted and attacked by four white youths whom he described as very drunk, red-eyed and holding bottles. In the course of their vicious beating, plaintiff's skull was fractured, causing him to lose consciousness for approximately 24 hours.

The City of New York, as owner of Downing Stadium, had granted concert promoter Delsener/Slater Enterprises, Ltd. (Delsener), the producer of the concert, a permit to use the stadium and the surrounding parking fields for the purposes of holding the festival on July 10 and 11, 1996. This permit required Delsener to provide appropriate security for the stadium and additional facilities. Prior to the festival, the New York City Police Department (NYPD) and the park's patrol officers agreed to provide security in the area outside Downing Stadium, which covered the Sunken Meadow parking area where the assault occurred. Security inside the stadium was provided by Delsener and its private security subcontractors.

Plaintiff alleges that the City, Delsener and the promoter's subcontractors were negligent for having breached their duty to exercise reasonable care in making the parking lot and surrounding area safe for those present. More specifically, plaintiff alleges that defendants were negligent in not adequately supervising and maintaining control over the area, not preventing the possession and consumption of drugs and alcohol on the premises, and permitting concert attendees to act in an unruly, chaotic, dangerous and violent manner. Plaintiff's wife interposes a cause of action for loss of consortium.

Initially, in moving to dismiss the claims against it, Delsener takes the position that plaintiff cannot show that his injury from a criminal assault was both foreseeable and a proximate result of any negligence by Delsener in employing adequate security measures at the concert.

*Foreseeability*

Delsener reasons that it had no notice of any prior criminal activity in the area, and therefore it had no duty to provide security to prevent such criminal activity.

This Court's decision in *Florman v City of New York* (293 AD2d 120 [2002]) is instructive, although distinguishable on the facts. The plaintiff there was also injured in a parking lot at the same Lollapalooza Festival; however, the plaintiff in *Florman* was struck by a car driven at high speed, either recklessly or intentionally, by an unidentified individual through the parking field.

This Court in *Florman* acknowledged Delsener's duty: "a permittee with a contractual obligation to provide security[ ] has a common-law duty to take minimal precautions to protect * * * users of the facility from foreseeable harm, *including the criminal conduct of third parties*" (293 AD2d at 124 [emphasis added], citing *Burgos v Aqueduct Realty Corp.*, 92 NY2d 544, 548 [1998]). Of course, "this duty arises only when such party

'knows or has reason to know that there is a likelihood that third persons may endanger the safety of those lawfully on the premises [citations omitted]' " (*Florman*, 293 AD2d at 124, quoting *Brewster v Prince Apts.*, 264 AD2d 611, 614 [1999], *lv dismissed* 94 NY2d 875 [2000], *lv denied* 94 NY2d 762 [2000]). While prior incidents of the same sort on the premises *may* provide such knowledge (*id.*), that is not a prerequisite for proving that there was reason to know of the likelihood of such an incident. Indeed, this Court in *Florman* went on to acknowledge that certain types of incidents, including traffic accidents and "some forms of criminal activity" might have been reasonably foreseeable "in a gathering of this kind" (293 AD2d at 125, citing *Rotz v City of New York*, 143 AD2d 301 [1988]).

In *Rotz*, this Court considered an incident in which someone was trampled when a stampede occurred at a free Diana Ross concert in Central Park on a summer evening. The Court observed that "[i]n light of common contemporary experience a jury could certainly find that, in the absence of adequate supervision and control of that crowd, it was reasonably foreseeable that disorder, unruliness, a melee or a riot could erupt from some cause ignited by the vagaries of myriad individuals 'jammed together' in a heightened atmosphere" (143 AD2d at 305).

Similarly to *Rotz*, "common contemporary experience" would permit the prediction in this instance that the audience to be expected for this particular concert would contain a number of young men who could be expected to become intoxicated and engage in aggressive or violent behavior. Indeed, this conclusion is not based upon independent knowledge; it is supported by substantial evidentiary materials submitted by plaintiff.

First, plaintiff points out that records from Lollapalooza '94 and Lollapalooza '95 reveal that arrests were made for disorderly conduct, misdemeanor assault and criminal mischief. More importantly, in deposition, Delsener's own production manager *acknowledged the accuracy* of a journalist's description of the type of audience attending the concert: "a moshing crowd of bare-chested, sweating, staggeringly drunk and stoned 'Beavis and Butt-Head' types."

Further, the majority suggests that while *other* types of criminal activity might have been reasonably foreseeable, the type of attack that occurred here was unforeseeable. However, the testimony of New York Police Captain Neil Spadaro supports a possible finding that this specific type of incident *was actually foreseen*. In his deposition, he stated that at the all-agency review meeting planning for the concert, he raised the need for

security covering the ball fields where the cars would be parked, "to make sure that there was no tailgating or drinking or using drugs going on * * * before or during [the concert]." Particularly because the bands performing at this concert were predominantly heavy metal, which he would expect to attract an especially large proportion of young men, he was concerned that attendees who became intoxicated would get into fights, presenting a danger to other patrons.

The possibility that a group of intoxicated young men attending this event would assault an ISKCON temple member handing out religious literature is simply on a different, and much higher, order of probability than that of a driver in a crowded parking lot driving randomly and fast without regard for pedestrians, as was the case in *Florman*. At the very least, a question of fact exists as to the foreseeability of this type of assault occurring at this type of concert.

*Adequacy of Security and Proximate Cause*

As to the question of whether inadequate security was a proximate cause of the assault on plaintiff, Delsener contends that *Florman* already established that the security measures taken were adequate. However, the Court's remarks in *Florman* that "the City and Delsener undertook requisite security measures," citing the 24 police officers and three sergeants, the 20 Park Enforcement Patrol officers and the 30 employees of the parking subcontractor assigned to the parking fields (293 AD2d at 127), should not be relied upon to establish as a matter of law the adequacy of the security provided for all types of problems. First of all, the observation as to the sufficiency of security provided was necessarily related to the unusual type of incident at issue there. Notably, the decision went on immediately to note the impossibility of providing such security as would have prevented Ms. Florman's injuries, "except presumably to have had a security officer posted at the precise location where the incident took place or wherever pedestrians were gathered" (293 AD2d at 127).

But, more importantly, the recitation in *Florman* of the number of security officers fails to establish as a matter of law the sufficiency of the security provided, in view of an important piece of evidence offered by plaintiff here which was apparently not offered in *Florman*. At a follow-up deposition in this case, a police captain stated that the "Post List" containing patrol assignments for the concert indicates that *no* post assignment was made for the Sunken Meadow parking field. Far from having no legal significance, as the majority suggests, this evidence permits the inference that even if the number of security

officers was sufficient, the manner of their deployment could still have rendered security inadequate at the particular location in question.

Moreover, in contrast to the facts in the *Florman* case, where virtually no level of security could have prevented the bizarre incident, here, the stationing of security guards at regular intervals might have succeeded in keeping a lid on the type of uncontrolled, escalating rowdiness that thrives in such conditions in the absence of a visible peace-keeping force.

This is not to say that we deem the security force to have been insufficient; rather, the question of whether the number and location of security staff were reasonable to maintain adequate security should be decided by a jury.

As to Delsener's claim, and the conclusion of the majority, that the criminal assault on plaintiff must be considered an independent, intervening act of third parties, cutting off any liability as a matter of law, it is refuted by our earlier conclusion that this sort of aggression could, at trial, be found to be foreseeable under such conditions. "Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]). As this Court observed in *Florman*, some forms of criminal activity might be reasonably foreseeable in such circumstances (293 AD2d at 125).

Since, as previously discussed, the attack may be found to have been a foreseeable consequence of the situation created by Delsener's failure to provide adequate security, Delsener's liability may not be cut off at this juncture on the ground of intervening cause.

*Effect of the NYPD Undertaking Security of the Parking Fields*

In my view, Delsener is also incorrect in its contention that the action against it must be dismissed because any breach of duty was by the NYPD. Delsener points to preconcert interagency meetings, in which police representatives assumed responsibility for providing security in the area where plaintiff was hurt. However, Delsener was contractually obligated to the City to ensure adequate security at the concert event. That unambiguous contractual obligation cannot be abrogated merely by the oral assurances of Police Department representatives that their officers would patrol the parking fields. As the *Florman* Court recognized, "Delsener was * * * obligated

under the contract to provide security for all permitted facilities, including the parking areas, and, thus, has failed, as a matter of law, to demonstrate that it was relieved of this contractual obligation" (293 AD2d at 124).

Accordingly, I would affirm the denial of Delsener/Slater's motion for summary judgment.