| |
|---|
| **Iken v Bohemian Brethren Presbyt. Church** |
| 2024 NY Slip Op 31630(U) |
| May 8, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 654614/2017 |
| Judge: Joel M. Cohen |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 03M

-------------------------------------------------------------------------------X

MONICA IKEN, ORDINARY FACES LLC

> Plaintiffs,

- v -

BOHEMIAN BRETHREN PRESBYTERIAN CHURCH,

> Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 654614/2017 |
| **MOTION DATE** | 12/22/2023 |
| **MOTION SEQ. NO.** | 002 |

**DECISION + ORDER ON
MOTION**

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 002) 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101

were read on this motion for _____ SUMMARY JUDGMENT _____ .

Defendant Bohemian Brethren Presbyterian Church a/k/a Avenue Church NYC f/k/a Jan Hus Presbyterian Church ("Church" or "Defendant") moves for summary judgment dismissing all remaining claims asserted by Plaintiffs Monica Iken ("Iken") and Ordinary Faces LLC (together with Iken, "Plaintiffs").[1]  For the following reasons, Defendant's motion is granted in part.

## BACKGROUND

In or around January 2012, the Church began having discussions with Iken regarding the possibility of her opening a new preschool on the premises.  Another entity, International Preschools ("IPS"), had previously operated a preschool in the Church for decades.

Iken was familiar with the Church and its then Pastor, Pastor Ray, going back to 2001 (NYSCEF 85 [Pl's Response to Def's Rule 19-a Statement ["SUF"] ¶33 [not disputed];

---

[1] Defendant has not moved for summary judgment on its counterclaims.

**654614/2017   IKEN, MONICA vs. BOHEMIAN BRETHREN**
Motion No.  002

**Page 1 of 19**

1 of 19

NYSCEF 82 ["Iken Aff"] ¶5; NYSCEF 89 [Dempsey Tr] at 13:20-14:8).  The parties entered into two non-binding letters of intent on January 1, 2012 and March 1, 2013 (NYSCEF 55, 56).

### *Negotiations and Signing of the Lease*

Iken, who was new to operating a preschool, testified that she had discussions with Pastor Ray and a representative from IPS regarding the suitability of the premises for a preschool. According to Iken, at a 2012 meeting, Pastor Ray presented Plaintiff with IPS's 2004 Letter of No Objection ("LNO")[2] from the New York City Department of Buildings (DOB), which showed that IPS had been approved to run a preschool with 35 students (the "2004 LNO").  She claims that Pastor Ray represented that this 2004 LNO was all that she would need to obtain an LNO to operate her proposed preschool (*see* NYSCEF 88 [Iken Tr] at 132:11-22] ["Q. Did pastor Ray ever specifically tell you [Iken] that because you have a copy now of this 2004 LNO issued to IPS, you don't need a new one? A. No, that's not what we discussed. He said they had one and every preschool has to have their own. So with this, it was saying they have all their stuff and there wouldn't be any issues of getting one.  Q. So you knew in 2012 when you met with him and you got a copy of this document that you would need to get your own LNO?  A. Right. That's correct."])  Iken also claims she was given a document from the FDNY showing a working fire alarm, and a copy of IPS's financials to facilitate creation of her business plan (Iken Aff ¶9; Iken Tr at 126:17-132:18; 348:4-10 ["He [IPS] gave me the letter of no objection; he gave me the approval from FDNY that the sprinklers were viable; he have – and he gave – he

---

[2] An LNO is issued if the proposed or actual use of the building complies with New York City Building Codes and Zoning Resolutions, and the occupancy load and exits of the building are unchanged (*see* "Letter of No Objection or Completion," NYC.GOV (available at https://www.nyc.gov/site/buildings/property-or-business-owner/letter-of-no-objection-or-completion.page).

**654614/2017   IKEN, MONICA vs. BOHEMIAN BRETHREN**
Motion No.  002

**Page 2 of 19**

2 of 19

showed me his license that he had to run International Preschool; and he gave me the calendar for the year; he have me the budget that he had that he put together"]).

Plaintiff hired a team of professionals, including a general contractor, architect, building engineer, an expeditor, and a "building rep" (SUF ¶37 [undisputed]). Between March 2013 and the execution of the Lease in August 2014, there were discussions involving the parties' lawyers, more than twenty site visits or meetings, and the draft lease went "back and forth" numerous times (SUF ¶38 [undisputed]; Iken Tr at 95:12- 96:16, 101:21-102:13; 103:12-105:16). There were also discussions regarding plans for the larger second and third floor space of the building, including making necessary repairs with the intent of bringing income into the Church (NYSCEF 78).

On or about August 5, 2014, Ordinary Faces LLC and the Church entered into a five-year lease agreement, guaranteed by Iken, for the use of the Church's second floor as a preschool (NYSCEF 50 [the "Lease"]). Pursuant to the Lease, Plaintiff would first complete certain "initial work" and "build out" the space, provided that the Church first approved Plaintiff's plans and specifications (id. §5.08(a)).

The Lease stated that Tenant "has inspected the demised premises, is fully familiar with the condition thereof, and agrees to take possession of the Leased Premises . . . in their present 'as is' condition," (id. §14), and that there "shall be . . . no liability on the part of Landlord by reason of inconvenience, annoyance or injury to normal operations arising from Landlord's making, or the failure of Landlord or others to make, any repairs, alterations, additions or improvements in or to any portion of the Building or the Leased Premises or in and to fixtures, appurtenances and equipment thereof." (id. §6(c)). Section 7(b), which pertains to "Tenant's use of the Building," requires that "at all times Tenant shall have all required approvals, permits and

**654614/2017  IKEN, MONICA vs. BOHEMIAN BRETHREN**
**Motion No. 002**

**Page 3 of 19**

[* 3]

licenses, whether applicable to the Leased Premises, Tenant's signs, and Tenant's business or conduct of business" (*id.* §7(b)).

Section 18 provides that "Tenant, at Tenant's expense, must promptly apply for and diligently pursue and obtain all approvals, licenses, consents, and permits (individually and collectively, the "Approvals"), required for this Lease, including but not limited to: for the operation of a preschool in the Building by Tenant, the consents of New York State Department of Education, the New York City Department of Education, the New York City Department of Buildings, and if necessary, Landlord may obtain at Tenant's sole expense, any Approvals required by the New York State Attorney General's Office, any umbrella organization of Landlord, judicial consents, and/or any consent required by any other third party, as applicable. Landlord and Tenant, at Tenant's expense, shall act in good faith and shall reasonably cooperate with each other to obtain such Approvals." (*id.* §18).

Shortly thereafter, on September 1, 2014, the Church hired a new pastor, Beverly Dempsey, who replaced the prior interim pastor and Pastor Ray (NYSCEF 89 ["Dempsey Tr"] at 6:13-16).[3] Pastor Dempsey testified that she was not involved with the lease negotiations with Iken and Ordinary Faces, as the lease was signed before she arrived (*id.* at 8:9-13).

### *The Build-Out and Building Code Violations*

To complete the build-out contemplated by the Lease, Plaintiff spent approximately $90,000 renovating the space with the plan of accommodating forty students. Prior to signing the Lease, Plaintiff had been told there was a working sprinkler system (Iken Tr at 388:18-25;

---

[3] Pastor Dempsey is the only individual who testified on behalf of the Church.

**654614/2017 IKEN, MONICA vs. BOHEMIAN BRETHREN**
**Motion No. 002**

Page 4 of 19

4 of 19

389:1-4). However, at some point during the renovations, Plaintiff learned there was no working fire alarm system in the building (Iken Aff ¶14).

In September 2014, the parties entered into a Rider to the Lease, which provided:

> Article 3 [of the Lease] is hereby modified to read that in the event that Tenant is not able to open in time for the winter school term solely as a result of an inability to install a proper fire alarm system the base rent shall be abated fifty percent (50%) from January 1, 2015 through and including August 31, 2015. The Landlord and Tenant shall both act expeditiously and diligently to obtain the proper permits, commence the work necessary to install the proper fire alarm system and obtain inspections and sign-offs.

(NYSCEF 54). Plaintiff alleges that despite the terms of the Rider, Defendant took no steps to assist her in obtaining the fire alarm system (Iken Aff ¶15).

Iken ultimately secured funding for the fire alarm system through donations to the Church by former Mayor Bloomberg and businessman Steve Madden, who had sent his children to IPS (SUF ¶31 [undisputed]; Iken Aff ¶16; Iken Tr at 330:19-25; 331:1-4). The Church "agree[d] to the terms of, and ultimately sign[ed], [the grant] agreement" (NYSCEF 80). Pastor Dempsey stated in an email dated October 4, 2014, that "the use of the grant for improvements to plumbing, electrical and fire alarm systems sounds great. As you know, the Church isn't in a position to fund any anticipated costs to do so" (NYSCEF 80). The fire alarm system that Plaintiff was able to install only covered the second floor (where Plaintiff was intending to operate), not the entire building (Iken Aff ¶16), which ultimately impacted her ability to operate a school of the size she had planned (*see infra* "The Temporary LNO").

The preschool finally opened for the Fall 2015 semester, commencing in September (Iken Aff ¶17). The Church accepted 50 percent of base rent due under the Lease for the abatement period set forth in the September 2014 Rider (SUF ¶29 [undisputed]).

**654614/2017   IKEN, MONICA vs. BOHEMIAN BRETHREN**
**Motion No.  002**

**Page 5 of 19**

[* 5]

Following the opening, Plaintiff was unable to obtain an LNO. According to Plaintiff, this was due to a number of open building code violations (Iken Aff ¶17). Plaintiff asked Defendant to remedy the violations so that she could obtain an LNO (Iken Aff ¶18). Pastor Dempsey testified that the Church's building consultant reached out to an architect to help figure out what the violations were (Dempsey Tr at 49:16-21) and acknowledges that there were certain decades-old code violations relating to an inaccessible, closed off, dumbwaiter shaft (SUP ¶17; Dempsey Tr at 36:25-39:17). Plaintiff's expeditor informed Iken that there were certain issues with the shaft and wrote to Iken in an email dated March 1, 2017: "Have her [Pastor Dempsey] ask the elevator Company who disabled the devices if the [sic] filed with the dob and if they did to clear the Violations." (NYSCEF 67). Pastor Dempsey provided information to Iken regarding the violations (*see* NYSCEF 66 [Email from Dempsey to Iken] ["Please let me know if this satisfies the need. If not, tell me what the inspector told you we need to do or say."]).

On April 27, 2017, Iken wrote to Pastor Dempsey requesting that the Church provide a letter showing that they were working on addressing building code violations (NYSCEF 69). Pastor Dempsey responded, "It's on my list!" (*id.*).

While Pastor Dempsey testified that she wasn't sure how to cure building code violations, she conceded that this was likely a violation only the Church could cure (Dempsey Tr at 53:6-23). At the time of Pastor Dempsey's deposition in February 2019, she could not explain why the violations had not been cured (*id.* at 42:22-25).

According to Plaintiff, because Plaintiff could not operate a full-time preschool until these issues were resolved, she was forced to operate as a split day/part-time daycare program called "enrichment," which severely impacted her revenue, and only enabled her to cover her costs (Iken Aff ¶19).

**654614/2017  IKEN, MONICA vs. BOHEMIAN BRETHREN**
**Motion No.  002**

**Page 6 of 19**

6 of 19

### *The Church's Outreach Programs & Occupants*

In addition to the building code issues, Plaintiff alleges that the Church increased its homeless outreach programs without sufficient oversight, that these programs were incompatible with having a preschool on the property, and that Plaintiff was not informed of these plans or programs prior to entering the Lease. It is undisputed that the Church had provided services to the homeless since at least 1990 (SUF ¶50 [undisputed]). However, between July 2015 and May 2017, the Church implemented a program that allowed homeless individuals to shower in the Church (SUP ¶55 [undisputed]). Pastor Dempsey testified that she hired additional staff to oversee operations, including an executive director and an assistant director of operations who had experience in social work (Dempsey Tr at 65-67), but also testified that the Church did not have any security personnel (*id.* at 57:10-23), and that the shower program operated during the daytime hours and may have overlapped with the hours that the preschool was in session (*id.* at 65-67). Pastor Dempsey also conceded that the Church stopped the shower program after there was an incident involving a fight between a homeless person and the staff member who was escorting him (*id.* at 59:3-17).

Pastor Dempsey admitted that the Church allows 200-300 homeless individuals to use its address as a mailing address, and that, unknown to the Church at the time, a Level 3 sex offender had been frequenting the premises to pick up his mail (Dempsey Tr at 59:23-61:2; 83:14-17). According to Plaintiff, one of the parents pulled her daughter out of the school when she learned about this Sex Offender (Iken Aff ¶20).

Iken also testified that after the Lease had been signed, she learned that certain individuals she thought had been living at the Church legally, were in fact not lawfully permitted to reside there. Iken knew some of the Church's "workers and session members . . . who were

**654614/2017 IKEN, MONICA vs. BOHEMIAN BRETHREN**
**Motion No. 002**

**Page 7 of 19**

7 of 19

[* 7]

taking care of the church" were living in the Church (SUF ¶63 [undisputed]; Iken Tr at 281:18-283:16 and 284:20-285:3). Iken admitted that no one ever told her the "residents" were legal, but she assumed they were legal occupants, and did not come to believe otherwise until Plaintiffs and their team discovered this information when they were "trying to get the documentation to be able to run [the] school." (SUF ¶64 [undisputed]; Iken Tr at 285:4-286:23). Pastor Dempsey testified as to her understanding that individuals had lived in the Church since 1888 (Dempsey Tr at 78:6-25), and that she believed the current residents were living in the Church legally (*id.* at 79:8-16; 80:14-17).

In or around May 2017, four complaints were filed with the DOB (NYSCEF 75; SUF ¶65 [undisputed]). One complaint alleged that there were tenants living in the Church in violation of the "certificate of occupancy," but the DOB found that complaint "unsubstantiated based on department records" since there is no "certificate of occupancy" for the Church building (NYSCEF 75 at Plaint003236). Another alleged that certain space in the Church had been unlawfully converted into "single room occupancy" (or "SRO") units with a shared bathroom, but the DOB concluded that there was "no violation warranted for complaint at the time of inspection" since "no illegal use" was observed (NYSCEF 75 at Plaint003225-Plaint003227).

### *The Temporary LNO*

Plaintiff submits that she began receiving notices of violation and the school was shut down after a complaint that the school was operating without an LNO. Plaintiff submitted an application on May 10, 2017 for an LNO, which was rejected by the DOB on the ground that for a preschool with forty (40) children, located on the any floor other than the ground floor, "[r]egulations require that the entire building be equipped with a Fire Alarm," whereas the "Inspection Report indicated that there is a Fire Alarm on the second floor only." (NYSCEF 71).

**654614/2017   IKEN, MONICA vs. BOHEMIAN BRETHREN**
**Motion No. 002**

**Page 8 of 19**

8 of 19

In an e-mail exchange with Iken on the morning of May 11, 2017, DOB Deputy Borough Commissioner Bruno explained that "[y]ou are permitted to have no more than 30 children in a non- ground floor space unless the entire building is equipped with a fire alarm. . . . I will be happy to expedite the review of your LNO request for 30 children" (NYSCEF 73).  On May 11, 2017, Plaintiff was issued a temporary LNO for 30 children for May 2017 to April 2018 (NYSCEF 72).

According to Plaintiff, Commissioner Bruno agreed to give her a temporary LNO for one year on the condition that the violations were going to be remedied. Plaintiff submits that she was explicitly told by the DOB that if the violations were not cured, she would not get another LNO (Iken Aff ¶23).

Plaintiff began withholding rent from Defendant due to the fines and violations, and stated in writing that it was because Defendant was not curing the violations, which was preventing her from obtaining a LNO (Iken Aff ¶23).   As a result, Plaintiff submits that 4/5 of her lease was rendered useless, and even the 1/5 of the lease where she was able to operate was severely impacted (Iken Aff ¶24), and seeks lost profits and/or her out-of-pocket costs.

The church building was sold in February 2019 (Dempsey Tr at 78:14-19; NYSCEF 86 at 9 n1), approximately a year and half after this lawsuit was filed.  Around February 2019, Plaintiff found a new space for the preschool and entered into a new lease with a non-party (Iken Tr at 310:4-20).

Plaintiff submits that Defendant's successor has recently cleared the violations (*see* NYSCEF 95), and all that was required to do so was the filing of an Affirmation of Correction.

**654614/2017   IKEN, MONICA vs. BOHEMIAN BRETHREN**
**Motion No.  002**

**Page 9 of 19**

9 of 19

## Procedural History

Plaintiffs commenced this action by filing a Summons and Verified Complaint on July 3, 2017, alleging claims for breach of contract (first cause of action), fraudulent inducement (second cause of action), and prima facie tort (third cause of action) (NYSCEF 1 ["Complaint"]).

On September 8, 2017, the Church filed a motion to dismiss the Complaint pursuant to CPLR 3211(a)(1) and 3211(a)(7). By Decision and Order dated January 9, 2018, the Court (Bransten, J.) granted Defendant's motion to dismiss the fraudulent inducement, prima facie tort, and breach of the lease claim, except for the portion related to Plaintiffs' right of quiet enjoyment of the property (NYSCEF 15). Both parties appealed.

On January 26, 2018, the Church filed a Verified Answer and Counterclaims, asserting counterclaims for non-payment of rent, breach of the guaranty, unjust enrichment, and tortious interference (NYSCEF 19). Plaintiff filed its answer to the counterclaims on March 5, 2018 (NYSCEF 23).

By Order June 28, 2018, the Appellate Division, First Department affirmed the Dismissal Order in part and modified it in part, to reinstate the breach claim, reinstate the fraudulent inducement claim, and to dismiss the breach claim with respect to plaintiffs' right of quiet enjoyment (see Iken v Bohemian Brethren Presbyt. Church, 162 AD3d 594, 594 [1st Dept 2018]).

With respect to the building code violations, the First Department held that "the complaint does not specify whether repairs, as opposed to payment of a penalty or filing paperwork, were required to cure. As such, article 6 of the lease which states that defendant is not responsible for making any repairs cannot be used to defeat a motion to dismiss. Moreover, article 14 states that plaintiffs were taking the leased premises 'as-is.' However, article 18

654614/2017   IKEN, MONICA vs. BOHEMIAN BRETHREN          Page 10 of 19
Motion No. 002

10 of 19

explicitly states defendant would 'reasonably cooperate' with plaintiffs in obtaining approvals from the NYC Department of Buildings. As this is a motion to dismiss, plaintiffs are accorded the benefit of every favorable inference, and the documentary evidence does not conclusively demonstrate that defendant did not have an obligation to cure the building code violations" (*id.* at 594-95). As to the fire alarm system, the First Department held that "plaintiffs properly pled that defendant failed to take any steps to install a proper fire alarm system in violation of the rider to the lease, even though plaintiff Monica Iken was able to secure a donated system" (*id.* at 595).

Finally, as to the fraudulent inducement claims, the First Department found that Plaintiffs "properly pled a fraudulent inducement claim with respect to defendants materially misrepresenting that a 2004 letter of no objection was all plaintiffs would need, failing to disclose to plaintiffs that defendant intended to remove oversight over homeless individuals on the property, and fraudulently misrepresenting that homeless individuals were living on the property legally, when they were doing so illegally" (*id.*).

There then ensued a long period of inactivity in the case, due apparently to COVID-related events. On June 8, 2023, this Court issued a Notice requesting a status update (NYSCEF 42). The Church now moves for Summary Judgment on Plaintiffs' remaining claims.

## DISCUSSION

"The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). "Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

**654614/2017   IKEN, MONICA vs. BOHEMIAN BRETHREN**
**Motion No. 002**

Page 11 of 19

11 of 19

If the moving party crosses that threshold, the party opposing the motion "must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim or must demonstrate acceptable excuse for his failure to meet the requirement of tender in admissible form; mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" (*Zuckerman*, 49 NY2d at 562; *see Glassman v Weinberg*, 154 AD3d 407, 408 [1st Dept 2017]).

## I. Breach of the Lease

Defendant failed to establish its prima facie entitlement to summary judgment on the breach of contract claim involving (a) the building code violations and (b) the fire alarm system. The elements of a breach of contract claim are "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages" (*Belle Light. LLC v Artisan Constr. Partners LLC*, 178 AD3d 605, 606 [1st Dept 2019]).

### A. Building Code Violations

Defendant has failed to demonstrate its entitlement to summary judgment on the issue of the alleged building code violations as there remains an issue of fact as to what was required to cure the violations. It is undisputed that Article 6 of the Lease states that Defendant is not responsible for making any repairs, and that Article 14 states that Plaintiffs were taking the leased premises "as-is." However, as already held by the First Department, "article 18 explicitly states defendant would 'reasonably cooperate' with plaintiffs in obtaining approvals from the NYC Department of Buildings" and "and the documentary evidence does not conclusively demonstrate that defendant did not have an obligation to cure the building code violations" (NYSCEF 27). Thus, the issue remains as to whether the building code violations could be cured

654614/2017  IKEN, MONICA vs. BOHEMIAN BRETHREN
Motion No.  002

Page 12 of 19

by filing paperwork or paying of a penalty (as opposed to making repairs), and whether the Church breached article 18 by failing to do so.

Defendant admits that "certain decades-old code violations with respect to the Building (related to an inaccessible, closed off, dumbwaiter shaft) were never cured." Additionally, Defendant testified that it was likely that only the Church could remedy this violation (Dempsey Tr at 53:6-23). Furthermore, from the documents submitted by Defendant, the Church never took the position that it was not its responsibility to help cure the building violations (*see* NYSCEF 66 [Email from Dempsey to Iken] ["Please let me know if this satisfies the need. If not, tell me what the inspector told you we need to do or say."]; NYSCEF 69 [responding to Iken's email requesting that Defendant provide a letter showing that Defendant was working on addressing building violations with "It's on my list!"]).

However, Defendant argues that this supposed "failure" to cure did not – as a matter of fact – prevent Plaintiffs from obtaining the LNO they needed to operate their preschool. However, the record reflects that Plaintiff was only able to obtain a *temporary* LNO for one year (with the number of children reduced from 40 to 30). While Defendant argues that Plaintiff has not established that the issuance of the temporary LNO was due only to the building code violations, the Movant's "burden on a motion for summary judgment cannot be satisfied merely by pointing out gaps in the plaintiff's case" (*Englington Med., P.C. v Motor Veh. Acc. Indem. Corp.*, 81 AD3d 223, 230 [2d Dept 2011]). The time for Plaintiff to prove her case is at trial, not in response to a summary judgment motion.

Moreover, Plaintiff submits that Defendant's successor has recently resolved the violations (*see* NYSCEF 95) by filing of an Affirmation of Correction. Defendant claims that

654614/2017  IKEN, MONICA vs. BOHEMIAN BRETHREN
Motion No. 002

Page 13 of 19

this required repairs, for which Defendant was not responsible. At the very least, this creates a factual issue that cannot be resolved in Defendant's favor on a motion for summary judgment.

### B. Fire Alarm System

Likewise, Defendant has failed to demonstrate its entitlement to summary judgment on the branch of the breach of contract claim relating to the fire alarm system. After the execution of the Lease, the Church agreed to execute a Rider regarding the fire alarm. The First Department held: "plaintiffs properly pled that defendant failed to take any steps to install a proper fire alarm system in violation of the rider to the lease, even though plaintiff Monica Iken was able to secure a donated system." (NYSCEF 27).

Defendant argues that the Church honored the Rider by accepting abated rent from Tenant, even though it was clear that Plaintiffs' inability to open for the winter 2014-2015 school term was not "solely as a result of an inability to install a proper fire alarm system." However, as Plaintiff points out, the Rider explicitly stated that "The Landlord and Tenant *shall both act* expeditiously and diligently to obtain the proper permits" which is a separate sentence from the rent abatement clause upon which Defendant relies.

Defendant argues that Plaintiff has not established that the Church failed to act "expeditiously and diligently" with respect to the fire alarm system. Again, Defendant cannot prevail on summary judgment simply by pointing out purported gaps in Plaintiff's case (*Englington Med.*, 81 AD3d at 230). There remains an issue of fact as to what the Church was required to do under the Rider, and whether the Church failed to perform its obligations.

### II. Fraudulent Inducement

To state a cause of action for fraud, a plaintiff must allege a representation of material fact, made for the purpose of inducing another to act on it, the falsity of the representation,

**654614/2017 IKEN, MONICA vs. BOHEMIAN BRETHREN**
**Motion No. 002**

**Page 14 of 19**

14 of 19

knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury (*Kaufman v Cohen*, 307 AD2d 113, 119 [1st Dept 2003]; *Basis Pac-Rim Opportunity Fund (Master) v TCW Asset Mgt. Co.,* 40 Misc 3d 1240(A) [NY Sup, NY County 2013], *affd sub nom. Basis Pac-Rim Opportunity Fund v TCW Asset Mgt. Co.,* 124 AD3d 538 [1st Dept 2015]). Here, Defendant has demonstrated its entitlement to summary judgment dismissing Plaintiffs' claim as it relates to the 2004 LNO and the status of residents living at the Church. However, issues of fact preclude summary judgment on Plaintiffs' claim relating to the Church removing oversight over its homeless outreach programs.

### A. The 2004 Letter of No Objection

Defendant has made a prima facie showing of entitlement to summary judgment as a matter of law on Plaintiffs' fraud claim as it relates to the 2004 LNO. First, even assuming that Pastor Ray made the representation that the 2004 LNO was all Iken needed in order to obtain her own LNO, such a representation would not support Plaintiffs' purported fraudulent inducement claim. "Representations that are mere expressions of opinion of present or future expectations are not to be considered promises when examining the issue of fraud in the inducement" (*Burgundy Basin Inn, Ltd. v Watkins Glen Grand Prix Corp.,* 51 AD2d 140, 146 [4th Dept 1976]; *Goldman v Strough Real Estate, Inc.,* 2 AD3d 677, 678 [2d Dept 2003] [citations omitted]).

Furthermore, any purported reliance by Iken on Pastor Ray's alleged statement was not reasonable. Iken does not dispute that at the time of the Lease negotiations, she was the founder and Chief Executive Officer of a nationally recognized nonprofit, and owner of at least two other businesses, including a recently opened preschool on Long Island (SUF"] ¶33 [not disputed]).

**654614/2017 IKEN, MONICA vs. BOHEMIAN BRETHREN**
**Motion No. 002**

**Page 15 of 19**

15 of 19

Plaintiff also engaged in more than two-and-a-half years of discussions and negotiations prior to executing the Lease, was represented by attorneys in connection with preliminary discussions with the Church and then negotiation and execution of the Lease, and hired a team of professionals upon whom she relied or should have relied, including a general contractor, an architect, a building engineer, an expeditor, and a building rep (see, e.g., Global Mins. & Metals Corp. v Holmes, 35 AD3d 93, 99 [1st Dept 2006] [rejecting "the contention that issues of material misrepresentation and reasonable reliance are not subject to summary disposition"]; J.A.O. Acquisition Corp. v Stavitsky, 18 AD3d 389, 391 [1st Dept 2005] [recognizing that, in unique circumstances, courts may determine the issue of "reasonable reliance" on summary judgment]).

Plaintiffs have failed to produce evidentiary proof sufficient to establish the existence of material issues of fact which require a trial on this issue. Plaintiffs argue that reliance is an issue of fact, however, as noted, in certain circumstances, reasonable reliance can be determined on summary judgment. Accordingly, Defendant's motion for summary judgment dismissing Plaintiffs' fraud claim as it relates to the LNO is granted.

B. Status of Residents Living at the Church

Defendant has made a prima facie showing of entitlement to summary judgment as a matter of law on Plaintiffs' fraud claim as it relates to the status of residents living at the Church based on Iken's own testimony. Iken admitted at her deposition that she was aware there were Church staff or session members living in the Church before signing the Lease, she was never told whether the residents of the Church were there "legally" or "illegally," and she did not even come to believe that anyone was living in the Church illegally until after the Lease was executed (Iken Tr at 285:4-286:23). Thus, the claim that she was "fraudulently induced" into executing

654614/2017 IKEN, MONICA vs. BOHEMIAN BRETHREN
Motion No. 002

Page 16 of 19

[* 16]

16 of 19

the Lease by an alleged misrepresentation as to the legality of the residents is rebutted by Plaintiffs' own admission. This also demonstrates that there was no reliance by Plaintiffs on this alleged misrepresentation because it was not something that Plaintiffs considered until after signing the Lease.

Plaintiffs' conclusory allegations in opposition fail to establish the existence of a triable issue of fact (*see George S. May Intern. Co. v Thirsty Moose, Inc.*, 19 AD3d 721, 722 [3d Dept 2005]). Furthermore, Plaintiffs have not demonstrated the relevance of this issue to the operation of the preschool or Plaintiffs' ability to obtain certain approvals. As the DOB complaints demonstrate, no violations were found relating to residents living in the building.

### C. Removing Oversight

However, Defendant has not demonstrated entitlement to summary judgment on the branch of the fraudulent inducement claim concerning the Church purported failing to disclose the planned expansion of its homeless outreach programs without adequate supervision in the context of a proposed preschool on the premises.

Defendant first argues that it cannot be held liable for their failure to disclose its intended lack of oversight because there was no fiduciary relationship between the parties. However, the First Department already ruled that Plaintiff has a viable cause of action on this claim. And unlike the cases cited by Defendant, here Defendant knew Plaintiff was looking to open a preschool (*see* Dempsey Tr at 50:5-10) and represented that the space would be suitable for that purpose.

Second, Defendant argues that any lack of oversight cannot form the basis for the Fraudulent Inducement Claim because the expanded program was not implemented by the Church until after Pastor Dempsey joined in September 2014 – after execution of the Lease.

**654614/2017   IKEN, MONICA vs. BOHEMIAN BRETHREN**                    **Page 17 of 19**
**Motion No.  002**

17 of 19

However, as Plaintiffs point out, these programs were implemented only *one month* after they entered into the Lease, thus there is a question of fact as to whether or not these increased programs were contemplated (but not disclosed) at the time the Lease was executed.

Furthermore, Defendant's contention that they increased oversight of this program is not conclusive. The Church testified that they hired more people to oversee operations including an executive director and an assistant director of operations who had experience in social work (Dempsey Tr at 65-67), but also testified that it did not have security personnel (*id.* at 57:10-23), and that the Shower Program operated during the daytime hours and may have overlapped with the hours that the preschool was in session (*id.* at 65-67). The Church also conceded that it stopped the Shower Program after there was an incident between one homeless person and the staff member who was escorting him (*id.* at 59:3-17), and that, unknown to the Church at the time, a sex offender had been frequenting the premises to pick up his mail (*id.* at 59-61). Accordingly, there remain issues of fact that preclude summary judgment on this claim.

Accordingly, it is

**ORDERED** that Defendant's motion for Summary Judgment is **GRANTED IN PART**, and the branch of the Fraudulent Inducement Claim relating to the 2004 LNO and the Status of Residents in the Church are dismissed; the motion is otherwise **denied**; it is further

**ORDERED** that there will be an initial pretrial conference on June 5, 2024 at 10:00 am to determine the length and dates for trial and other logistical issues, as well as to discuss potential avenues for alternative dispute resolution pursuant to Commercial Division Rule 30.

**654614/2017  IKEN, MONICA vs. BOHEMIAN BRETHREN**
**Motion No.  002**

**Page 18 of 19**

[* 18]

18 of 19

This constitutes the Decision and Order of the Court.

20240508152110JMCOHEN2C3DABE5C0D874D54BA25FCF662C454A9

**5/8/2024**
_____
**DATE**

_____
**JOEL M. COHEN, J.S.C.**

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

654614/2017   IKEN, MONICA vs. BOHEMIAN BRETHREN
Motion No.  002

Page 19 of 19

19 of 19