IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| JOE LOUIS ALLEN, JR., individually, and SAMIR POLES, individually, | ) ) ) | No. 40099-9-III |
| Appellants. | ) ) ) | |
| v. | ) ) | |
| PHISH; PHISH, INC.; and DOES 1-100, | ) ) | PUBLISHED OPINION |
| Respondents. | ) ) ) | |
| _____ | ) ) | |
| JOE LOUIS ALLEN, JR., individually, and SAMIR POLES, individually, | ) ) ) | |
| Appellants, | ) ) ) | |
| v. | ) ) ) | |
| LIVE NATION ENTERTAINMENT, INC., a Delaware Corporation; and all its subsidiaries; LIVE NATION NORTHWEST; LIVE NATION, LG TOURS (USA), LLC, a California Limited Liability Company; LIVE NATION MARKETING, INC., a California Corporation; LIVE NATION MTOURS (USA), INC., a California Corporation; LIVE NATION UTOURS (USA), INC., a California Corporation; LIVE NATION WORLDWIDE, INC., a | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

Delaware Corporation; STARPLEX )
CORPORATION, d/b/a CROWD )
MANAGEMENT SERVICES, d/b/a )
CMS, a foreign corporation; ISTAR )
BLUES, LLC, a Maryland corporation; )
HOB LAND, LLC, a Washington Limited )
Liability Company; H & K LOTS, LLC, a )
Washington Limited Liability Company; )
GRANT COUNTY WASHINGTON; and )
DOES 1-100, )
)
     Respondents. )

  STAAB, J. — While attending a Phish concert at the Gorge Amphitheater, Joe Louis Allen and Samir Poles (collectively Plaintiffs) were struck by rocks thrown by one or more unknown third persons. They filed suit against Phish, Inc., Live Nation Entertainment, Inc. and its affiliates (collectively referred to as Live Nation), the Grant County Sheriff's Office (GCSO), and Starplex Corporation d/b/a Crowd Management Services d/b/a CMS (collectively Defendants) claiming (1) premises liability and negligent security, and (2) negligent hiring, training, and supervision. The Plaintiffs argued that Live Nation owed them a duty of care under the *Restatement* (*Second*) *of Torts* § 344 (Am. L. Inst. 1965) to protect against reasonably foreseeable third-party criminal conduct due to their status as business invitees and the remaining Defendants owed them a duty because they were acting on behalf of Live Nation in providing security services.

2

No. 40099-9-III
*Joe Allen, Jr. & Samir Poles v. Phish, Inc., et al*

The trial court dismissed the Plaintiffs' claims, concluding that Live Nation did not owe them a duty. On appeal, the Plaintiffs argue that evidence of prior experience along with the nature and character of Phish concerts put Live Nation on notice that violent assaults were foreseeable as being within the "general field of danger."

We hold that the Plaintiffs have failed to establish that the Defendants owed them a duty. Our conclusion is driven by the Supreme Court's decision in *McKown v. Simon Property Group, Inc.*, 182 Wn.2d 752, 344 P.3d 661 (2015). In *McKown*, the majority adopted a narrow definition of a business owner's duty to foresee harmful conduct by third parties. In determining whether the harmful conduct in question was foreseeable, courts can consider the place and character of a business. But the evidence must demonstrate that the specific act in question was foreseeable. Only after a court finds that a duty exists does the factfinder apply the general field of danger test to determine the scope of that duty.

Here, the evidence produced by the Plaintiffs shows that Phish concerts have historically been associated with the sale of nitrous oxide outside the venue. While the Plaintiffs contend that there is a nexus between the sale and use of nitrous oxide and violent behavior, they point to only a handful of such events occurring across the nation over several years. The Plaintiffs' evidence fails to show that the sale of nitrous oxide outside the venue made random attacks inside the venue foreseeable. Because the

3

Plaintiffs fail to demonstrate that the specific acts were foreseeable, they fail to show that the Defendants had a duty to protect the Plaintiffs from these acts. As there was no duty to protect, there was no corresponding duty to provide adequate security or use reasonable care in the hiring and retention of security.

We affirm the superior court's order on summary judgment dismissing the plaintiff's complaint.

BACKGROUND

Since the trial court dismissed the Plaintiffs' claims on summary judgment, the following facts are set forth in a light most favorable to them.

Defendant IStar Blues, LLC owns the Gorge Amphitheatre (Gorge), a large concert venue overlooking the Columbia River Gorge at George, in Grant County, Washington. It features a concert amphitheater, multiple campgrounds, and parking areas. Live Nation leased the Gorge from IStar for a 20-year period and managed it under a lease agreement at the time of the assaults in this case.

Phish, Inc. F/S/O Phish, a band, entered a contract to perform a concert series at the Gorge in July 2018. As part of the contract, Live Nation agreed to provide security for the Gorge during the concert series and to promote the concerts. Phish participated in coordinating security and had personnel onsite working with Live Nation.

Live Nation contracted with defendant Starplex Corporation, doing business as Crowd Management Services (CMS), to provide security, parking services, and crowd management for events at the amphitheater. CMS developed a crowd management plan and coordinated with Live Nation on staffing. The contract specified CMS and its employees were independent contractors and not agents of Live Nation.

Live Nation further contracted with the GCSO for onsite traffic and law enforcement services. GCSO was involved in law enforcement and security planning for the concerts and coordinated with CMS.

*Evidence of the Character of Phish Concerts*

In support of Plaintiffs' claim that the Defendants owed them a duty to protect against the harmful conduct of third persons, the Plaintiffs submitted evidence pertaining to Phish concerts generally and the 2018 concert at the Gorge in particular. The evidence demonstrates that Phish concerts have been occurring for decades and, similar to Grateful Dead concerts, the band has developed a loyal fan base that tends to follow it from venue to venue. Before and during these concerts a vendor's row referred to as "Shakedown Street" will form in the parking lot where people sell memorabilia, food, and drugs.

One of the substances long associated with the band Phish, and sold on Shakedown Street, is nitrous oxide, or laughing gas.[1] Plaintiffs allege that for decades vendors known as the "Nitrous Mafia" have been selling nitrous oxide at Phish concerts in balloons to be inhaled. The Plaintiffs also claim that there is a known association between violence and the Nitrous Mafia dating back to 2009. In support of this claim the Plaintiffs provided three examples. They point to a news article from 2010 reporting that the Mafia allegedly murdered a patron at an outdoor festival and pummeled a parking attendant. They also point to a YouTube video showing a brawl outside of Madison Square Garden in 2017 related to nitrous oxide sales.

Despite Live Nation's ban on nitrous oxide, the Plaintiffs allege that the sale and distribution of the gas was open and prevalent at the Phish concert in 2018. Three groups in particular, two groups described as African American, and one group described as Aryan were selling nitrous oxide outside the concert venue.

The Plaintiffs produced evidence that the Defendants knew that nitrous oxide was likely to be available at the 2018 Phish concert, but did little to discourage the sale or take extra security measures. Declarations were provided by security employees stating that they did not feel prepared to handle the prohibited sale of nitrous oxide. However, a

---

[1] Nitrous oxide is not a controlled substance and is not illegal to possess per se. *See generally* ch. 69.50 RCW. However, Live Nation has banned the substance from the Gorge Amphitheater.

defense witness testified that they did not take extra security steps to stop nitrous oxide sales because nitrous oxide was considered a nuisance and did not usually cause violence.

Plaintiffs pointed out that during the 2018 concert one security employee reported that she was assaulted in the campground, and a concert patron reported seeing one nitrous oxide seller swinging a hatchet at another seller. The Plaintiffs' evidence does not include any violent acts occurring inside the venue either at this concert or previous concerts.

*Assaults*

The Plaintiffs, both African American, separately attended the Phish concert at the Gorge in July 2018. On Saturday evening of the concert series, as one of the Plaintiffs exited a portable restroom near the stage, he was struck in the face with a rock. His assailant was described as a large white male with a scruffy dark beard wearing a baseball cap, t-shirt, and cargo shorts.

Minutes later, the other Plaintiff was struck in the back of the head with a rock while standing on a grassy hill overlooking the stage. The attacker was described as a large white man with a tattoo on his calf wearing cargo shorts, a backwards baseball cap, and a white and red shirt. In both cases, the assailant immediately fled. While several persons of interest were identified, no charges have been filed to date.

*Procedure*

The Plaintiffs sued Live Nation Entertainment, GCSO, and CMS for premises liability and negligent security, and negligent hiring, training, and supervision. They brought the same claims against Phish in a separate lawsuit, which was later consolidated with the former case.

In their complaint, Plaintiffs asserted that the Defendants collectively owed them a duty to protect against the assaults of third persons based on their status as invitees and the place and character of the concert, including the violence associated with known sales of nitrous oxide.

Each defendant later moved for summary judgment dismissal of the claims, arguing that they did not owe the Plaintiffs a duty to foresee and prevent the assaults. The Plaintiffs opposed the summary judgment motions, arguing that Live Nation as a possessor of the land, and the other Defendants acting on behalf of Live Nation, owed invitees, such as the Plaintiffs, a duty to protect against reasonably foreseeable third-party criminal conduct under *Restatement* § 344.

In support of the Plaintiffs' position that a duty existed, the Plaintiffs produced evidence of the character of Phish concerts historically, the events at this particular concert, and argued that the assaults were foreseeable as falling within the general field of danger. Clerk's Papers (CP) at 1266. Plaintiffs relied on the declarations of two experts in the field of large public venue security, Russell Kolins and Charles Patten.

Kolins declared he was "familiar with the . . . lawless atmosphere at Phish concerts promoted by Live Nation." CP at 1418. He declared that nitrous oxide sales and the associated violence had been linked to Phish concerts for over two decades. He pointed out that Phish and GCSO representatives testified about their awareness of organized nitrous oxide sales at Phish concerts, and Live Nation testified about a 2016 concert at the Gorge. Without pointing to any specific instances, Kolins opined that it was reasonably foreseeable that the presence and sale of nitrous oxide could create the added a risk of "violent competition between organized groups of nitrous oxide sellers and would increase the risk of violence inside the amphitheater and to the patrons anywhere at the venue." CP at 1422.

Both experts concluded that the assaults on the Plaintiffs were within the reasonably foreseeable field of danger. Kolins declared that the Defendants should have anticipated the assaults and "implement[ed] a security plan to address this field of danger." CP at 1423. Patten similarly declared that

> [i]t is my opinion that Defendants collectively failed to take ordinary and reasonable steps to protect concertgoers from criminal conduct that occurred within a reasonably foreseeable field of danger that should have been anticipated. This field of danger was reasonably foreseeable given the nature and characteristics of large concert venues such as the Gorge.

CP at 1333. He opined that Defendants failed to conduct an adequate risk assessment, implement an adequate security plan, and employ trained security staff despite knowledge of organized nitrous oxide sales at the Gorge.

9

The trial court held a hearing on the motions and later entered a letter ruling indicating that it would grant summary judgment dismissal in favor of all the defendants. In its letter, the court explained that the general field of danger test was inconsistent with *Restatement* § 344, and that the Defendants owed the Plaintiffs no duty under *Restatement* § 344 because the harm suffered was not reasonably foreseeable imminent harm. Subsequently, the court issued written orders incorporating its letter ruling and dismissing all the claims against Defendants with prejudice.

Plaintiffs timely appealed.

## ANALYSIS

1.   WHETHER DEFENDANTS OWED PLAINTIFFS A DUTY UNDER RESTATEMENT § 344

The Plaintiffs contend that the Defendants collectively owed them a duty under *Restatement* § 344 to protect against the reasonably foreseeable third-party criminal conduct that resulted in their injuries. They assert that they presented sufficient evidence to establish this duty as a matter of law and that the remaining foreseeability question, relevant to the scope of the duty, is a question of fact for the jury. The Defendants, on the other hand, argue that summary judgment was properly granted because the Plaintiffs failed to establish that the Defendants owed a duty under *Restatement* § 344.

*A. Negligence Summary Judgment Standards*

We review an order dismissing a complaint on summary judgment de novo, undertaking the same inquiry as the trial court. *Hertog v. City of Seattle*, 138 Wn.2d 265,

275, 979 P.2d 400 (1999). In doing so, we consider all facts and reasonable inferences in a light most favorable to the nonmoving party. *Berger v. Sonneland*, 144 Wn.2d 91, 102-03, 26 P.3d 257 (2001). Summary judgment is properly granted where there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). On summary judgment, once a moving party establishes this initial burden, the nonmoving party must rebut the moving party's contentions by setting forth specific facts showing there is a genuine issue for trial. *Seven Gables Corp. v. MGM/UA Ent. Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986); CR 56(e).

While an expert's opinion on an ultimate issue of fact can be sufficient to defeat dismissal on summary judgment, the opinion must be based on facts and cannot be conclusory or based on assumptions or speculations. *Volk v. DeMeerleer*, 187 Wn.2d 241, 277, 386 P.3d 254 (2016).

A negligence cause of action "requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Tincani v. Inland Empire Zoological Soc.*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). To defeat summary judgment, the nonmoving party "must establish an issue of material fact as to each element of negligence." *Martini v. Post*, 178 Wn. App. 153, 164, 313 P.3d 473 (2013). "The existence of a duty is a question of law." *Briggs v. Pacificorp*, 120 Wn. App. 319, 322, 85 P.3d 369 (2003).

"Once it is determined that a legal duty exists, it is generally the jury's function to decide the foreseeable range of danger, thus limiting the scope of that duty." *Id.*

### B. Whether a Special Relationship Existed to Establish a Duty Under *Restatement* § 344

The primary issue in this case is whether a duty arose under *Restatement* § 344. To determine this, the court must first establish whether the Plaintiffs had a "special relationship" with the Defendants.

Generally, a person "does not have a duty to protect others from the criminal acts of third parties." *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 223, 802 P.2d 1360 (1991). However, such a duty arises "if a special relationship exists between the defendant, the third party, or the third party's victim." *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 200, 943 P.2d 286 (1997).[2] "[A] special relationship exists between a business and an invitee because the invitee enters the business premises for the economic benefit of the business." *Id.* at 202.

Live Nation concedes that it was in a special relationship with the Plaintiffs because of its status as "possessor" of the Gorge. It acknowledges that it was in

---

[2] Under *Restatement* § 315:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
    (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
    (b) a special relation exists between the actor and the other which gives to the other a right to protection.

possession of the Gorge and managed it pursuant to a lease agreement. The remaining

Defendants deny having a special relationship with the Plaintiffs. While this may be true,

the Plaintiffs' claims against the remaining Defendants is based on their work on behalf

of the possessor; it is not based on a special relationship. We address this argument

following our analysis of whether Live Nation owed the Plaintiffs a duty.

### C. Landowner's Duty to Anticipate and Protect Against the Criminal Acts of Third Persons

In *McKown*, our Supreme Court held that *Restatement* § 344, "is generally

consistent with Washington law, and that comments d and f generally describe the

contours of the duty owed." 182 Wn.2d at 764. Under *Restatement* § 315(b), "a

'business owes a duty to its invitees to protect them from reasonably foreseeable criminal

acts of third persons.'" *Brady v. Whitewater Creek, Inc.*, 24 Wn. App. 2d 728, 745-46,

521 P.3d 236 (2022) (internal quotation marks omitted) (quoting *McKown*, 182 Wn.2d at

765). *Restatement* § 344 provides:

> A possessor of land who holds it open to the public for entry for his
> business purposes is subject to liability to members of the public while they
> are upon the land for such a purpose, for physical harm caused by the
> accidental, negligent, or intentionally harmful acts of third persons or
> animals, and by the failure of the possessor to exercise reasonable care to
>
>> (a) discover that such acts are being done or are likely to be done, or
>>
>> (b) give a warning adequate to enable the visitors to avoid the harm,
>> or otherwise to protect them against it.

13

This is only a "potential" duty and does not apply to a specific case unless the plaintiff can demonstrate that the specific criminal conduct was foreseeable. *Nivens*, 133 Wn.2d at 205.

Comment f to *Restatement* § 344 "provides that to the extent that a duty is owed, it is a limited duty based on foreseeability." *McKown*, 182 Wn.2d at 768. Specifically, the comment reads:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

RESTATEMENT § 344, cmt. f.

Comment f contemplates that a business owes a duty when the business owner knows or has reason to know that third party harmful conduct is either imminent or reasonably foreseeable. *McKown*, 182 Wn.2d at 768-69. Here, the Plaintiffs do not allege that there was reason to know that the assaults were imminent. Instead, they contend the assaults were reasonably foreseeable.

14

D. *The Nature and Character of a Business Can Establish a Duty Under Restatement § 344*

The parties disagree on what evidence can be considered in establishing foreseeability for purposes of creating a duty under *Restatement* § 344. The Defendants argue that *McKown* did not decide whether foreseeability may be established by the character of a business, leaving that question open for future consideration. They argue that we should reject character as a sole method of demonstrating foreseeability for the purpose of establishing a business's duty. The Plaintiffs on the other hand assert that foreseeability can be established by character of the business and in this case through a combination of prior experience and the character of a business. We conclude that both parties are wrong, to a certain extent.

The *Restatements*, as adopted by our Supreme Court, provide that if the place or character of a business or the owner's past experience is such that the owner "should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." RESTATEMENT § 344 cmt. f.

*McKown* held that the nature of a business can establish foreseeability. 182 Wn.2d at 770 ("proving acts of similar violence is not the only way for a plaintiff to

establish a duty as provided in the *Restatement* and comment sections that we adopted in *Nivens*"). Thus, we reject the Defendants' characterization of *McKown*'s holding.

But we also reject the Plaintiffs' claim that "prior experience" is broader than prior similar incidents. *McKown* held that when a plaintiff relies on "prior experience," they must show prior similar incidents. 182 Wn.2d at 773-74 ("[W]hen a landowner or possessor's duty to protect business invitees from third party criminal conduct *arises from his prior experience*, that duty generally requires a history of *prior similar incidents* on the business premises within the prior experience of the landowner or possessor's business.") (emphasis added).

We do not decide whether courts can consider more than one factor, i.e., past experience and character, in determining foreseeability because the Plaintiffs explicitly deny any attempt to rely on prior similar incidents. Nevertheless, their assertion that "prior experience" includes generalized criminal conduct fails under *McKown*.

### E. *Level of Specificity in Characterizing the Harmful Conduct That Plaintiffs Allege Was Foreseeable for Purposes of Establishing a Duty*

In establishing foreseeability, the parties dispute the level of specificity needed in characterizing the criminal act. The Plaintiffs contend that the Defendants' prior experience with Phish concerts as well as the nature and character of these concerts put the Defendants on notice that the criminal acts of other concert patrons was foreseeable. More specifically, they argue that where evidence other than prior similar incidents is

16

used to establish a duty under *Restatement* § 344 the court should focus on whether the harm fell within the general field of danger even if the actual harm may be unusual or unexpected.

The Defendants respond that a business's duty to protect against the harmful acts of third persons cannot be established solely through evidence of the place or character of a business and, even if it could, the general field of danger test does not apply in establishing a duty but applies only in determining the scope of that duty.

As we noted above, the character of a business can establish a duty. But we agree with the Defendants that the general field of danger test applies in determining the scope of a duty and does not apply to the determination of whether a duty exists in the first place.

While *Restatement* § 344 provides an exception to the general rule of nonliability, the determination of whether a duty arises under this exception depends on the circumstances of each case. *Nivens*, 133 Wn.2d at 205. When considering a business owner's liability under *Restatement* § 344, foreseeability plays a role in determining both the duty and scope of the duty. *McKown*, 182 Wn.2d at 764.

The duty imposed under the special relationship of a business to its invitees is narrowly construed. *McKown*, 182 Wn.2d at 766. "Criminal activity is not foreseeable by a landowner merely because it is foreseeable that criminal activity might occur. To rule otherwise would render a landowner an insurer against criminal activity." 3 LOUIS

A. LEHR JR. & ALFREDO J. MARQUEZ-STERLING, PREMISES LIABILITY § 43:4, at 183 (3d

ed. 2023).  In defining the contours of a business's duty, the *McKown* court rejected a

broad notice rule or a totality of the circumstances test, noting that expanding the duty in

this way "would improperly shift the duty to protect the public against crime from the

government to private businesses."  182 Wn.2d at 772.  Instead, the duty inquiry focuses

on "whether the *specific acts* in question were foreseeable rather than whether the

landowner should have anticipated any act from a broad array of possible criminal

behavior or from past information from any source that some unspecified harm is likely."

*Id.* at 767 (emphasis added).

Once duty is established, the scope of that duty is decided by a jury.  *Id.* at 762.

While foreseeability also plays a role in determining scope, this foreseeability analysis is

different.  When considering scope of the duty, the focus is on the harm not the act, and

the question is whether "'the harm sustained must be reasonably perceived as being

within the general field of danger covered by the specific duty owed by the defendant.'"

*Id.* at 763 (internal quotation marks omitted).

In support of their argument that the broader field of danger test should apply in

determining whether a duty exists in the first place, the Plaintiffs rely on the Court of

Appeals decision in *Meyers v. Ferndale School District*, 12 Wn. App. 2d 254, 457 P.3d

483 (2020) (*Meyers* I), and the unpublished decision in *Celes v. Lone Pine Apartment, LLC*.[3]  We find these cases distinguishable and unpersuasive.

In *Meyers* I, the issue was a school's duty to protect its students during an off-campus outing.  The Supreme Court granted review and held that the Court of Appeals "erroneously conflated the duty inquiry with the legal cause inquiry," but affirmed Division One's decision to reverse and remand.  *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 291, 297, 481 P.3d 1084 (2021) (*Meyers* II).

*Meyers* is legally distinguishable from this case because the special relationship was between a school and its K-12 students.  "Where this type of special relationship is formed, it is accompanied by a heightened duty of care to protect the person from any foreseeable harm, equating that duty to strict liability."  *Barlow v. Wash. State Univ.*, 2 Wn.3d 583, 593, 540 P.3d 783 (2024).  This heightened duty does not apply when the special relationship is based on a business and invitee.  *See id.* at 596-97.

In *Meyers* II, the Supreme Court also discussed the general field of danger test, but did so in relation to the scope of duty, not the existence of a duty.  In addressing foreseeability's application to negligence under this relationship, the court noted that "'the pertinent inquiry is not whether the actual harm was of a particular kind which was expectable.  Rather, the question is whether the actual harm fell within a general field of

---

[3] No. 78788-8-I (Wash. Ct. App. May 18, 2020) (unpublished), https://www.courts .wa.gov/opinions/pdf/787888.pdf.

danger which should have been anticipated.'" *Meyers* II, 197 Wn.2d at 288 (quoting

*McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 321, 255 P.2d 360 (1953)).

The court's reference to "negligence" is ambiguous, but in the next paragraph the court

agrees with the Court of Appeals and holds that "viewing the facts in the light most

favorable to Meyers, whether the harm in this case was *within the applicable duty* is a

question for the jury." *Id.* at 289 (emphasis added). The reference to a question of fact

and to harm within the applicable duty indicates that the court's reference to the general

field of danger pertained to the scope of duty and not the creation of a duty.

We also find *Celes* distinguishable. Not only is it unpublished, but it relied on the

analysis in *Meyers* I, which was later rejected by the Supreme Court in *Meyers* II. To the

extent that *Celes* holds that the general field of danger test applies to the existence of a

duty, it conflicts with the Supreme Court's decision in *McKown*.

*McKown* on the other hand, is based on the duties of a business to its invitees

under *Restatement* § 344. In addition, *McKown* distinctly addressed the difference

between the existence of a duty and the scope of that duty, noting that "foreseeability of

harm as a limit on the *scope of the duty*, considers whether the harm sustained is

reasonably perceived as being within the general field of danger covered by the duty

owed by the defendant." *McKown*, 182 Wn.2d at 764.

More recently, in *Pacheco v. United States*, 200 Wn.2d 171, 190, 515 P.3d 510

(2022), our Supreme Court provided further clarification on the distinction between

foreseeability that imposes a duty and foreseeability that determines the scope of that

duty:

> This distinction can be a bit unclear in the abstract, but it is well illustrated by *McKown*, where the issue was whether a mall's owner could be liable for a mass shooting that occurred there. In that case, foreseeability was a question of law going to whether a duty existed because a landowner's "duty to protect business invitees from third party criminal conduct" arises only "when such conduct is foreseeable based on past experience of prior similar acts." [*McKown*, 182 Wn.2d] at 757. By contrast, where the existence of a duty has been established as a matter of law, foreseeability becomes a factual determination as to "whether the kind of harm which actually occurred should have been foreseen as the kind of harm from which defendant had a duty to protect plaintiff." *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 226, 802 P.2d 1360 (1991).

(Footnote omitted.)

Another treatise describes the distinction between foreseeability that creates a duty

and foreseeability as a limit on the scope of that duty as thus:

> There is a difference between an inquiry into whether the landowner had notice of criminal activity sufficient to give rise to a duty, and foreseeability of harm as a limitation on the scope of a defendant's duty once duty is determined. The first inquiry is whether a duty to protect against third party criminal conduct is owed at all. The second inquiry, foreseeability of harm as a limit on the scope of the duty, considers whether the harm sustained is reasonably perceived as being within the general field of danger covered by the duty owed by the defendant. In this way, foreseeability plays a role in both the legal and factual inquiries regarding duty and its scope. *McKown v. Simon Property Group, Inc.*, 182 Wn.2d 752, 344 P.3d 661 (2015).

3 LEHR & MARQUEZ-STERLING, *supra*, § 43:2.

Here, we agree with the superior court and the Defendants that the general field of danger test does not apply in determining whether a duty exists, but applies only when determining the scope of a duty once it is established.

F. *Characterizing the Act that Must be Foreseeable*

Having determined that *McKown* requires us to focus on the specific act in question when determining whether a duty exists, the next step is to characterize the act that injured the Plaintiffs in this case.

The Plaintiffs produced evidence that they were the victims of a violent attack inside the concert venue. It is not clear whether there was one or two assailants. While the Plaintiffs claim that the assailants matched the description of Aryan nitrous oxide sellers, this claim is speculative.[4] The assailants were never identified. In each instance, the assailant was described as a large white man wearing cargo shorts, t-shirt, and a baseball cap. But there is no evidence that the assailants were associated with nitrous oxide sellers.

In addition, there is no evidence that the assaults occurring inside the venue were in any way associated with the sale of nitrous oxide occurring outside the venue in the

---

[4] "We consider all facts and reasonable inferences in the light most favorable to the nonmoving party, but the nonmoving party may not rely on speculation" to defeat summary judgment. *See Specialty Asphalt & Constr., LLC v. Lincoln County*, 191 Wn.2d 182, 191, 421 P.3d 925 (2018).

camping area. Instead, the evidence shows that the attacks on the Plaintiffs were completely random.

### G. Application

Under the limited exception provided in *Restatement* § 344, the Defendants have a duty to protect invitees who are on the premises for the purpose of the Defendants' business from the foreseeable harmful acts of third persons. *McKown* makes clear that for purposes of determining duty, we focus on whether the specific acts in question were foreseeable. *McKown*, 182 Wn.2d at 767. As applied to this case, the question becomes whether the character of Live Nation's business, which includes promoting Phish concerts, makes it foreseeable that third persons will randomly assault other patrons within the venue such that Live Nation should anticipate the assaults and take steps to prevent them. While this question seems straightforward, the answer is not clear.

In *McKown*, the court declined to consider whether, and under what circumstances, the character of a business made specific criminal acts foreseeable because this was an issue of first impression and the parties failed to propose a definition of "'place or character'" and a framework for evaluating when the character of a business would justify imposing a duty. *McKown*, 182 Wn.2d at 761-62. We are faced with the same problem here.

There are several factors to consider in determining the existence of a duty. In this case, a primary factor is the general common law rule of nonliability to third parties and

the policies behind that rule. *See Volk*, 187 Wn.2d at 263. To determine if the law imposes a duty of care and its extent, we must consider "'logic, common sense, justice, policy, and precedent.'" *Id*. (internal quotation marks omitted) (quoting *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 449, 243 P.3d 521 (2010) (plurality opinion). The concept of duty reflects public policy considerations that protect a plaintiff's interests against a defendant's conduct. *Id*. We use our judgment to balance these interests. *Id*.

Washington has not addressed the circumstances in which a business's character may impose a duty on the landowner to protect invitees from third-party acts. Cases from other jurisdictions are marginally relevant given that the breadth of duty in each state is different.[5] For example, other states often consider the character of a business as part of a broader totality of circumstances review. Madison Shepley, Comment, *The Character of the Business: Looking Through "Broken Windows" for Liability in Mass Shootings & Other Third-Party Criminal Acts*, 42 SEATTLE U. L. REV. 1531, 1548 (2019). While *McKown* left open the possibility that a duty could be imposed based on the character of a business, the court specifically rejected a totality of the circumstances approach to finding a duty. *McKown*, 182 Wn.2d at 772.

---

[5] For a survey of the different tests applied by states and a policy argument for expanding the test of foreseeability see Madison Shepley, Comment, *The Character of the Business: Looking Through "Broken Windows" for Liability in Mass Shootings & Other Third-Party Criminal Acts*, 42 Seattle U. L. Rev. 1531 (2019).

Washington courts that have considered evidence other than prior similar incidents have been reluctant to find a duty to protect against third-party conduct. For example, in *Nivens* the court held that businesses do not have a general duty to provide security. *Nivens*, 133 Wn.2d at 206. Instead, once a duty to protect is imposed, providing security may be necessary in certain circumstances to meet the standard of care. *Id*. at 206-07. In *Hutchins*, the court rejected as a policy matter that the business's location in a high-crime urban area was sufficient to impose a duty to protect on the business. 116 Wn.2d at 236. In *Craig v. Washington Trust Bank*, 94 Wn. App. 820, 826-27, 976 P.2d 126 (1999), the court held that neither the nature of a bank's business nor its location created a duty to protect a person outside the building.

Other jurisdictions that have adopted a limited duty under *Restatement* § 344 have likewise been careful in finding a duty. Generally, courts that have considered a business's place and character "have tended to focus on whether the place and character of a location or business 'invited' the criminal behavior." *Piazza v. Kellim*, 360 Or. 58, 79, 377 P.3d 492 (2016).

In *Maheshwari v. City of New York*, 2 N.Y.3d 288, 293, 810 N.E.2d 894, 778 N.Y.S.2d 442 (2004), the plaintiff was attacked in the parking lot during a Lollapalooza concert and claimed that as the landowner the city had a duty to protect the plaintiff because the crime was foreseeable and the defendant's negligence in providing security was a proximate cause of his injuries. To establish foreseeability, the plaintiff argued

that Lollapalooza attracts a crowd that is prone to criminal behavior, submitting statistics of crime at such concerts. *Id*. at 293-94. The plaintiff pointed out that one band in particular had a history of violent acts at its concerts. *Id*. at 294. Finally, the plaintiff argued that tailgating and drinking also occurred outside the venues at these concerts and argued that such activities increased the chances of criminal activity inside the venue. *Id*.

The *Maheshwari* court disagreed with the plaintiff's arguments and affirmed dismissal, holding that "any duty they owed to plaintiff did not include a guarantee of protection from a random act of violence." *Id*.[6] In reaching this result, the court noted that "[a] random criminal attack of this nature is not a predictable result of the gathering of a large group of people." *Id*. at 294.

In *Stricklin v. Stefani*, 358 F. Supp. 3d 516, 532 (W.D.N.C. 2018), the plaintiff was injured when the performer at a concert encouraged fans to move closer to the stage. In addressing the promotor's liability, the court noted foreseeability with respect to duty "must have some degree of specificity as to the type of harm alleged or the injury sustained." *Id*.. The court rejected as too generalized the plaintiff's argument that it was well known in the entertainment industry that crowds can rush the stage. *Id*. Instead, the court held that the promoter did not have a duty because the plaintiff failed to show that

---

[6] The court's analysis of foreseeability pertained to scope of duty, having determined that businesses have a general duty to minimize foreseeable dangers on the property. *Maheshwari*, 2 N.Y.3d at 294.

the promoter had notice that the performer would invite patrons to move closer to the stage. *Id.* at 532-33.

Here, the Plaintiffs fail to show that the nature and character of Phish concerts made it foreseeable that Live Nation could anticipate and prepare for random violent attacks inside the venue. The Plaintiffs do not allege or produce evidence that the character of concerts, or even rock concerts held in large venues is such that violent attacks frequently occur. Nor do they allege that Phish concerts are regularly boisterous with pushing, shoving, and hitting occurring.

The level of specificity needed to show foreseeability is demonstrated in *Miller v. Live Nation Worldwide, Inc.*, CV CBD-14-2697, 2016 WL 374103 (D. Md. Feb. 1, 2016), *order clarified on recons.*, CV CBD-14-2697, 2016 WL 1696541 (D. Md. Apr. 28, 2016). In that case, the plaintiff was injured by a crowd surfer while attending a Korn concert.[7] The plaintiff produced evidence that crowd surfing, an inherently dangerous activity, was a common occurrence at previous Korn concerts. While there were signs posted prohibiting the activity, crowd surfing began during the concert. Although security was aware that crowd surfing often occurred and was occurring at this concert, it was considered an accepted practice and they were told not to stop it. *Miller*, 2016 WL

---

[7] As the court explained, crowd surfing occurs when a person is hoisted above the crowd and held in a horizontal position while the crowd moves the person around. *Miller*, 2016 WL 374103, at *1 n.2.

374103, at \*4.  The court found the evidence sufficient to raise a question of fact as to whether Live Nation knew or should have known that crowd surfing was likely to occur or was occurring before the plaintiff was injured.  *Id*.

Here, the Plaintiffs do not allege that the specific act in question was foreseeable.  Instead, they argue that their evidence demonstrates:

> 1) the Defendants' past experience and "well known nexus" between the prohibited sale of nitrous oxide and the associated violence at Phish shows, 2) the nature of the dangers that arise from the congregation of thousands of concertgoers at Phish shows, 3) the series of security contracts between the Defendants and industry standards that establish responsibilities for providing security at concerts at venues like the Gorge, and 4) the growing environment of anarchy and lawlessness that emerged at the Gorge during the weekend of the Phish concerts in 2018.

Appellant's Br. at 52.

Even assuming these allegations are true, the acts described by the Plaintiffs are too generalized to make the specific acts in question foreseeable.  In simple terms, Plaintiffs are alleging that Phish concerts have a history of nitrous oxide sales.  Nitrous oxide sales create an atmosphere of violence, pointing to a handful of assaults over the last 10 years.  The sale of nitrous oxide in the camping area was prevalent at this particular concert.  There was a general atmosphere of lawlessness at this concert.  There were thousands of people in attendance at this concert.  And the Plaintiffs were assaulted inside the venue during random attacks that have no known association with the sale of nitrous oxide.

28

Generalized violence can manifest in many ways.  It is not the business owner's duty to anticipate every possible scenario.  Even if the Defendants tolerated the sale and use of nitrous oxide in the camping area, the Plaintiffs fail to show that this activity was inherently dangerous or increased the chance of random attacks inside the venue.  There may be other reasons to believe that patrons will throw objects during a concert, but that evidence was not presented here.

*McKown* holds that a landowner does not have a duty to anticipate "any act from a broad array of possible criminal behavior or from past information from any source that some unspecified harm is likely."  *McKown*, 182 Wn.2d at 767.  Instead, when determining if a duty exists, we look "to whether *the specific acts* in question were foreseeable."  *Id*.

Here, given that the Plaintiffs are not relying on prior similar incidents, they must produce evidence to show that the nature of a Phish concert or even the nature of similar concerts is such that it either invited violence or random attacks or put Live Nation on notice that random attacks were foreseeable.  They have not produced evidence of this nature and have thus failed to show that the Defendants had a duty to protect them from the random attacks occurring inside the venue.

2.    WHETHER A DUTY AROSE UNDER *RESTATEMENT* § 383.

Separate from any duty imposed on Live Nation as the possessor of the land, Plaintiffs allege that Phish, the security company CMS, and GCSO owed them a duty as

29

contractors acting on behalf of the land possessor, Live Nation. Such a duty may be imposed when a contractor is acting on behalf of the land owner:

> who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land.

RESTATEMENT § 383.

Under this section, if no duty is owed by the landowner, then no duty is owed by a contractor acting on behalf of the landowner. *Van Scoik v. Dep't of Nat. Res.*, 149 Wn. App. 328, 203 P.3d 389 (2009). Because we conclude that Live Nation as the land possessor owed no duty to the Plaintiffs, it follows that Phish, CMS, and GCSO do not owe a duty as contractors for Live Nation.

3.  NEGLIGENT HIRING, TRAINING, AND SUPERVISION CAUSE OF ACTION

Although the Plaintiffs' complaint brings a claim for negligent hiring, training, and supervision of the security staff, Plaintiffs acknowledge in their reply brief that "there is no independent claim for negligent hiring and training." Appellant's Reply Br. at 34. The superior court did not specifically address this claim in its order dismissing all of the Plaintiffs' causes of actions. In light of the Plaintiffs' concession on appeal, we decline to address this separate cause of action.

30

CONCLUSION

The trial court correctly concluded that the Defendants did not owe a duty under

*Restatement* § 344.  Accordingly, the trial court did not err in granting summary

judgment in favor of the Defendants.

Affirmed.

_____
                      Staab, J.

I CONCUR:


_____
        Murphy, J.

No. 40099-9-III

LAWRENCE-BERREY, C.J. (concurring in result) — In general, a possessor of land is not liable for the tortious or criminal acts of third persons. But a possessor may be liable if there is a reason to know, based on past experience, the nature of the business, or the character of the venue, that there is a likelihood that criminal conduct of third parties will occur on or at the venue. *McKown v. Simon Prop. Grp., Inc.*, 182 Wn.2d 752, 768, 344 P.3d 661 (2015).

Here, two concert attendees seek to impose liability on the operators of a concert venue for injuries sustained by one or two persons throwing rocks in separate incidents. Construing the evidence in favor of the injured attendees, in my view, a genuine issue of fact exists whether the operators of the venue had a reason to know that the mixture of rowdy concertgoers and nitrous oxide being sold just outside the venue made it likely that attendees would be injured at the venue. But I would affirm summary dismissal on the alternate ground argued below and on appeal—lack of causation.

We may affirm the trial court's summary judgment ruling on any theory raised by the pleadings and supported by the record. *Bangerter v. Hat Island Cmty. Ass'n*, 199 Wn.2d 183, 188, 504 P.3d 813 (2022). Here, there is no evidence beyond speculation that the rock thrower or throwers had imbibed nitrous oxide. Speculation is insufficient to withstand summary judgment. *Specialty Asphalt & Constr., LLC v. Lincoln County*, 191 Wn.2d 182, 191, 421 P.3d 925 (2018). The concert attendees' inability to link their

attacker or attackers to the activity that gives rise to the operators' duty is fatal to their

claims.

_____
LAWRENCE-BERREY, C.J.